Babatunde **LAWAL**

v.

**BRITISH AIRWAYS, PLC, Fast Travel, Inc., Jaweed Mohammed, Universal Postal and Travel Services MA Memon.**

**Civ. A. No. H–91–0082.**

United States District Court, S.D. Texas, Houston Division.

Nov. 24, 1992.

Michael Anthony Maness, Houston, TX, for plaintiff Babatunde Lawal.

David Wilks Corban, Fulbright & Jaworski, Houston, TX, for defendant British Airways, PLC.

George W. Dana, Houston, TX, for defendants Fast Travel, Inc., Jaweed Mohammed, Universal Postal & Travel Services and M.A. Memon.

## MEMORANDUM

HARMON, District Judge.

Plaintiff Babatunde Lawal brings this action against Defendants British Airways PLC, Fast Travel, Inc., Jaweed Mohammed, Universal Postal & Travel Services, and M.A. Memon, for alleged violations of the Texas Deceptive Trade Practices Act and monetary damages, attorney fees, costs and interest. Pending before the court is the Motion for Remand (Instrument # 11) filed by the plaintiff. Also pending before the Court is the Motion to Dismiss, or in the Alternative, for Judgment on the Pleadings (Instrument # 9) filed by Defendant British Airways. After considering the motions, the responses, the replies, the supplemental responses, and the applicable law, this Court is of the opinion that Plaintiff's motion to remand should be denied and that Defendant's motion to dismiss should be granted.

## I. STATEMENT OF FACTS

### A. *Procedural History*

Plaintiff initiated this action on December 5, 1990, in the 129th District Court of Harris County, Texas, Cause No. 90–64163. British Airways received notice of the action on December 24, 1990, and timely removed the action to this court on January 11, 1991. Plaintiff did not seek to remand for defects in removal procedure within thirty days of removal. Rather, Plaintiff moved to remand for lack of subject matter jurisdiction nearly a year later, on November 26, 1991.

On January 8, 1992, a default judgment was entered against defendants Fast Travel, Inc. and Jaweed Mohammed. The remaining defendants to this action are British Airways PLC ("British Airways"), Universal Postal & Travel Services, and M.A. Memon ("Memon").

### B. *Factual History*

On December 5, 1988, Babatunde Lawal paid $1,210.00 in cash for a round-trip airline ticket from Houston, Texas to Lagos, Nigeria. Plaintiff's Original Complaint at 2. He purchased his ticket from defendants Universal Postal & Travel Services and Memon, who were acting as authorized agents for British Airways. On December 19, 1988, Plaintiff used his ticket to fly from Houston Intercontinental Airport to Gatwick Airport in London, England, en route to Lagos Nigeria. He arrived at Gatwick uneventfully.

When Plaintiff attempted to board the flight from London to Lagos on December 20, 1988, he was allegedly detained and assaulted by British Airways security personnel who claimed that Plaintiff was using a stolen ticket. Plaintiff's Original Complaint at p. 3. Plaintiff contends that he was later permitted, under threat of arrest if he refused, to purchase another ticket for his Houston–Lagos round-trip at an additional cost of $4,380.00. Upon his return to Houston, Plaintiff demanded compensation and reimbursement from all defendants for the alleged humiliation and embarrassment this incident caused him. Universal refunded Plaintiff's cash payment of $1,200.00 for the original ticket, refusing all other demands. The remaining defendants refused to make any restitution at all. Plaintiff's Original Complaint at p. 3.

Plaintiff sued Defendants on varying causes of action, as agents of each other and individually. Plaintiff seeks to recover under the theories of common law fraud, negligence, and gross negligence for the following reasons: (1) Defendants' collective failure to maintain adequate records of and control over the ticket stock, or means of validating tickets; (2) Defendants' collective sale of tickets they knew or should have known would be dishonored; (3) falsely representing to Plaintiff that the tickets

were stolen; and (4) wrongfully, falsely and illegally detaining Plaintiff and threatening him with arrest unless he purchased new tickets.

Plaintiff seeks to hold British Airways, a foreign air carrier, individually liable for false arrest, false imprisonment, assault and battery, intentional infliction of emotional distress, and emotional injury caused him as actual and proximate consequences of the harm alleged above. He maintains that these wrongs entitle him to actual and punitive damages in excess of the minimum jurisdictional limits of this Court, with interest, attorneys' fees, court costs, and any other available relief. Plaintiff's Original Complaint at p. 5.

British Airways now moves to dismiss the action brought against it as it argues that all of Plaintiff's claims are preempted under the Airline Deregulation Act ("ADA") in that they relate to routes, rates, and services. In order to evade the preemptive sweep of the ADA plaintiff argues that this action should be remanded for lack of subject matter jurisdiction.

## II. DISCUSSION

### A. *Standard of Review*

#### 1. Remand for Lack of Subject Matter Jurisdiction

 When deciding a question of subject matter jurisdiction the Court construes the complaint broadly and liberally, although argumentative inferences favorable to the pleader will not be drawn. *Gaubert v. U.S.*, 885 F.2d 1284, 1285 (5th Cir.1989), *rev'd on other grounds*, —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (under Fed.Rule Civ.Proc. 12(b)(1)); Fed.R.Civ.P. 8(f)). The Court will also accept as true all uncontroverted factual allegations of the pleadings. *Id.* at 1285 (citing *Gibbs v. Buck*, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939)).

The Fifth Circuit has held that a court may dismiss an action on jurisdictional grounds if factual issues relevant to jurisdiction and those relevant to the merits can be analyzed discretely. *MCG, Inc., v. Great Western Energy Corp.*, 896 F.2d 170, 176 n. 6 (5th Cir.1990) (citing *McLain v. Real Estate Bd. of New Orleans, Inc.*, 583 F.2d 1315 (5th Cir.1978), *vacated on other grounds*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980)). Subject matter determinations, unlike typical motions to dismiss, may be made using any one of the following bases: " '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.' " *Barrett Computer Services, Inc. v. PDA, Inc.*, 884 F.2d 214, 220 (5th Cir. 1989) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)); *see Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1298 (5th Cir.1985) (universal standard to assess subject matter jurisdiction conflicts). This Court has a great deal of discretion to decide jurisdictional matters; using the standard set forth above this Court need not give deference to the nonmovant on fact considerations.

#### 2. Motions to Dismiss pursuant to Rule 12(b)(6)

Fed.R.Civ.P. 12(b)(6) provides that a motion to "dismiss for failure to state a claim upon which relief can be granted" may be proffered to dismiss a claim. When a district court reviews the sufficiency of a complaint, before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Id.* In considering a motion to dismiss under Rule 12(b)(6), the District Court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1255 (5th Cir.1986); *Windor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). Dismissal of a

claim is improper "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1984).

Therefore, in challenging the sufficiency of the complaint under Rule 12(b)(6), the defendants bear the burden of proving that under no interpretation of the facts set forth in the complaint can the plaintiffs succeed. *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–102.

### B. *The Applicable Law*

It is axiomatic that the same variable is dispositive of both issues presented. That variable is preemption. Should the plaintiff establish that the Airline Deregulation Act ("ADA") is not applicable not only would that determination necessitate a remand, but it would also demonstrate the meritlessness of British Airways' motion to dismiss. Conversely, if the defendants establish that plaintiff's claims are preempted, then they have also established this Court's jurisdiction over the matter.

At first blush it seems that the issues presented are fairly straightforward, but, plaintiff has succeeded through zealous advocacy of his claims in complicating the issues with untenable legal arguments suggesting, in some instances, that this court ignore precedent or interpret the law outside its plain meaning.

This Court must now consider (1) whether British Airways, as a foreign air carrier, is covered by the preemption provisions of the ADA; if that question is answered affirmatively, (2) whether this court has jurisdiction over this action, and, finally, (3) whether the ADA preempts plaintiff's state law claims.

### 1. The ADA, Preemption and the Foreign Air Carrier

■ This Court must first interpret the language of the ADA in order to determine whether, as a foreign air carrier, British Airways is afforded complete protection under the preemption provisions of the statute. 49 U.S.C.App. § 1305(a)(1).

The provisions of the ADA expressly preempt the States from "enact[ing] or enforc[ing] any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of *any air carrier* having *authority under subchapter IV* of this chapter to provide air transportation." 49 U.S.C.App. § 1305(a)(1) (West Appendix 1992) (emphasis added).

Plaintiff makes an impassioned argument, reasoning that the preemption provisions of the ADA do not apply to foreign air carriers. Plaintiff directs this court to the explicit phrase "air carrier" as it is used in that chapter. " 'Air carrier' means any citizen of the United States, who undertakes ... to engage in air transportation." 49 U.S.C. § 1301(3) (definition section of the Act). " 'Foreign Air Carrier' means any person, not a citizen of the United States, who undertakes ... to engage in Foreign Air transportation." 49 U.S.C.App. § 1301(22). Since the preemption provision applies only to an "air carrier," plaintiff argues that British Airways, as a foreign air carrier, does not fall under the preemption section.

British Airways acknowledges that it is a foreign air carrier. Def. British Airways' Mem. in resp. to Pl.'s Second Supp. Mem. at p. 1. Still, British Airways contends that the preemption provisions apply to it. British Airways cites to the language of the preemption provision itself for support, noting that Congress intended to preempt state laws that related to services of "any air carrier" not just "air carriers" as it is narrowly defined (emphasis added). British Airways argues that since the term "air carrier" is well defined the prefatory use of the word "any" would be mere surplusage under plaintiff's argument. It is further argued that this Court cannot interpret the

statute to render any part of it ineffective. *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1044 (2nd Cir.1985).

Additionally, in response to plaintiff's contention that the preemption provision is not applicable to foreign air carriers, British Airways is quick to note that the statute preempts state law as it relates to any air carrier "having authority under subchapter IV of this chapter to provide air transportation." 49 U.S.C.App. § 1305(a)(1). Subchapter IV deals with economic regulation of various types of carriers, including foreign air carriers. See 42 U.S.C.App. §§ 1371–1387.

The language of the statute is unambiguous. On its face § 1305(a)(1) is applicable to "any air carrier having authority under subchapter IV of this chapter to provide air transportation." This Court must first endeavor to interpret the statutory language according to its natural meaning.[1] The preemption provisions of the ADA clearly apply to foreign air carriers.

In addition to the plain language of the statute, a recent Supreme Court decision lends support to the conclusion that the preemption provisions may be applicable to foreign air carriers. See *Morales v. Trans World Airlines, Inc.*, ⸺ U.S. ⸺, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

In *Morales*, the Supreme Court held that the fair advertising provisions of the National Association of Attorneys General guidelines are preempted by the ADA. ⸺ U.S. at ⸺, 112 S.Ct. at 2041. In *Morales*, eleven of the 14 respondents who participated in the litigation and brought the declaratory judgment action were for-

eign air carriers. In that case the petitioner's reply brief presented the very same argument that plaintiff presents here, namely that the preemption provisions of the Act do not apply to foreign air carriers. Petitioner's Reply Brief on the Merits presented in *Morales v. Trans World Airlines, Inc.*, at pp. 16–17; Def. British Airways' Notice of New Development and Supp.Mem. in Support of Mot. to Dismiss Ex. B. Plaintiff's counsel responds by noting that that issue was never briefed or argued at any stage of those proceedings until he pointed out the problem to the Attorney General, who later included the point in a reply brief. Pl.'s Supp.Mem. Regarding New Developments at pp. 4–5.[2] Plaintiff argues that *Morales* is not dispositive since neither the Supreme Court nor any lower federal court addressed the issue. British Airways disagrees.

Plaintiff is well aware that a federal court may entertain objections to its subject matter jurisdiction at any stage of litigation, even on appeal. Plaintiff admits that the issue of whether foreign air carriers can use the preemption provisions to establish federal jurisdiction was eventually raised. The *Morales* Court entered judgment in favor of an entire array of respondents, without any mention of differences in their status as foreign or "citizen" air carriers.[3] See *Morales v. Trans World Airlines, Inc.*, ⸺ U.S. at ⸺ ⸺, 112 S.Ct. at 2034–41. Indeed, the Supreme Court described pricing practices in the industry as a whole, without distinction as to carrier status. *Morales v. Trans World Airlines, Inc.*, ⸺ U.S. at ⸺ ⸺, 112 S.Ct. at 2039–40.

---

1. See, *e.g.*, *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 591–92, 100 S.Ct. 1889, 1897–98, 64 L.Ed.2d 525 (1980).

2. Plaintiff's argument is seemingly at odds with his stance in an earlier pleading. There the plaintiff recognized that in *Trans World Airlines v. Mattox*, "Federal question jurisdiction was properly invoked by the *plaintiffs*." Pl.'s Motion to Remand at p. 5 (emphasis in original); Pl.'s Supp.Mem. in Support of Mot. to Remand at p. 6.

3. In support of Plaintiff's contention, he relies upon Stewart, *United States Citizenship Requirements of the Federal Aviation Act—A Misty Moor*

*of Legalisms or the Rampart of Protectionism?*, 55 J.Air L. & Com. 685 (1990), an article which analyzes the legislative history of the requirements for "citizen of the United States" status and the administrative interpretation of those requirements. This article, however is only tangentially related to understanding the phrase "any air carrier" used in section 1305. The article expounds upon the reasons for distinguishing between types of air carriers. Those reasons essentially are principled upon protecting American investments and economic interests, rather than addressed to regulation of airline services.

Viewing the natural language of the pre-emption provision and drawing jurisdictional implications from the recent *Morales* decision, this Court is compelled to conclude that the preemption provisions of § 1305(a)(1) apply to foreign air carriers.

■ Plaintiff's secondary argument, that § 1305(a)(1) bars only actions by states or other political agencies that relate to services, is faulty. Plaintiff contends that if British Airways is allowed to invoke pre-emption protection then § 1305 would bar all litigation, including litigation of air disasters, a preposterous result. This court rejects plaintiff's contention.

In an effort to obtain a standard with which to review the preemption provisions of the ADA the Supreme Court looked to similar language contained in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a). *Morales v. Trans World Airlines, Inc.,* —— U.S. at ——, 112 S.Ct. at 2037. The Supreme Court noted:

> we have held that a state law that "relates to" an employee benefit plan, and is preempted by ERISA, "if it has a connection with or reference to such a plan." *Shaw, [v. Delta Air Lines, Inc.] supra,* 463 U.S. [85] at 97, 103 S.Ct. [2890 at] 2900 [77 L.Ed.2d 490 (1983)]. Since the relevant language of the ADA is identical, we think it is appropriate to adopt the same standard here: State enforcement actions having a connection with or reference to airline "rates, routes, or services" are preempted under 49 U.S.C.App. § 1305(a)(1).

*Morales v. Trans World Airlines, Inc.,* —— U.S. at ——, 112 S.Ct. at 2037.

Inasmuch as the ERISA standard has been adopted as the ADA standard, the airline's use of the preemption provisions of the ADA against private litigants is permissible. It is no secret that ERISA plans, administrators and fiduciaries frequently move the court to dismiss private individuals' state law claims on preemption grounds. This fact is attested to by the vast amounts of ERISA case law. *See*

*generally Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *see also Ramirez v. Inter–Continental Hotels,* 890 F.2d 760, 762 (5th Cir.1989). Analogous application of the pre-emption provisions of the ADA would allow airlines the same standing.[4]

### 2. Subject Matter Jurisdiction

■ Plaintiff argues that this Court does not have subject matter jurisdiction since neither diversity or federal question jurisdiction had been invoked. Defendants argue that it was obviously the intent of Congress to make suits brought against airlines federal questions for the purposes of federal court jurisdiction.

Seemingly against his interest, plaintiff notes that "[t]he parties are agreed that . . . complete preemption, if sustained, would provide a constitutional basis for the exercise of federal judicial power in this case." Pl.'s Motion to Remand at p. 3 (citing *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)).

■ While it is true that a plaintiff is the master of his complaint, when a federal basis for jurisdiction clearly exists the plaintiff cannot avoid this fact. Plaintiff raises claims that relate to air carrier services which are governed by the ADA. 49 U.S.C.App. § 1305. Any complaint raising this type of claim is necessarily federal in character. *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–1547, 95 L.Ed.2d 55 (1987) (ERISA preemption). *See Morales v. Trans World Airlines, Inc.,* —— U.S. at —— – ——, 112 S.Ct. at 2036–38 (adopting for the ADA preemption standard the same analysis of "relates to" as it is used in ERISA cases).

---

4. Traditional plaintiffs would not be left without recourse. See, *infra,* at pp. 720–21.

The state law claims relating to the treatment of the passengers are preempted by 49 U.S.C.App. § 1305(a)(1). The Federal Aviation Act and the ADA specifically preempt state law. *See Morales v. Trans World Airlines, Inc.,* — U.S. at —, 112 S.Ct. at 2037; *O'Carroll v. American Airlines,* 863 F.2d 11, 13 (5th Cir.), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989); *Baugh v. Trans World Airlines, Inc.,* No. 87–2611 (S.D.Tex. October 26, 1989) (Memorandum and Order), *aff'd per curiam,* 915 F.2d 693 (5th Cir.1990) (table). The Supreme Court opined that § 1305 preempts all state law claims against airlines that relate to, among other things, airline services. *Morales v. Trans World Airlines, Inc.,* — U.S. at —, — – —, 112 S.Ct. at 2037, 2040–41; *O'Carroll v. American Airlines,* 863 F.2d at 13. A law relates to services if it has a "connection with or reference to" that subject. *Morales v. Trans World Airlines, Inc.,* — U.S. at —, 112 S.Ct. at 2037 (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983)). As noted above, Plaintiff's claims are not tenuous or remote[5] and clearly relate to airline services; inasmuch as § 1305 applies, there is exhibited a congressional intent to treat plaintiff's complaint "as federal in character" by its very nature invoking federal subject matter jurisdiction. See *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–1547.

Plaintiff also moves to remand, arguing that preemption of state law claims, and therefore the invocation of federal jurisdiction, cannot occur where no federal cause of action exists to substitute for the preempted state law claim. Plaintiff cites *Willy v. Coastal Corp.,* 855 F.2d 1160, 1165 (5th Cir.1988), for this proposition.[6]

■ However, the reality that a litigant may be left without a remedy or a federal cause of action must not factor into an analysis of the scope of preemption. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

■ Additionally, there is no private right of action unless data exists that demonstrates an unequivocal intent by Congress to devise such a right. *See Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). Several circuit courts that have addressed the question of whether § 1305 creates a private right of action. Those Courts have uniformly answered in the negative. *Air Transp. Ass'n of Am. v. Public Util. Comm'n of the State of Cal.,* 833 F.2d 200, 207 (9th Cir.1987); *Montauk–Caribbean Airways, Inc. v. Hope,* 784 F.2d 91, 97 (2nd Cir.), *cert. denied,* 479 U.S. 872, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986). Inasmuch as the Courts have agreed that the legislative history indicates that Congress

---

5. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983); *Sommers Drug Stores Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1466 (5th Cir.1986) (ERISA does not preempt state laws which affect benefit plans in a tenuous or remote manner); *Morales v. Trans World Airlines, Inc.,* — U.S. at —, 112 S.Ct. at 2040 (state law against gambling and prostitution may not necessarily "relate to" rates and services). The state law claims in the case at hand, however, are neither too tenuous nor too remote to have preemptive effect.

6. In furtherance of his argument plaintiff's cites *Salley v. Trans World Airlines, Inc.,* 723 F.Supp. 1164, 1165 (E.D.La.1989). Plaintiff's reliance on this untested decision of a district court is misplaced. *Salley* found that the scope of preemption suggested "preemption due to interference or conflict with federal law" and not "preemption based on pervasive federal regulation." 723 F.Supp. at 1166. The *Morales* Court took the opposite tack, finding that "[n]othing in the language of § 1305(a)(1) suggests that its 'relating to' pre-emption is limited to *inconsistent* state regulation." *Morales v. Trans World Airlines, Inc.,* — U.S. at —, 112 S.Ct. at 2038. Rather, the "pre-emption provision ... displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ... substantive requirements" of the ADA. *Id.* Furthermore, plaintiff's reliance on *Salley* for the proposition that certain statutes have been sunsetted out of existence is refuted by the express terms of the act which states that § 1374 (duty of air carrier to provide safe and adequate service) shall cease to be in effect "except insofar as such section requires air carriers to provide safe and adequate service." 49 U.S.C.App. § 1551(a)(4)(C). For a thorough examination of the sunset provisions see *Anderson v. USAir, Inc.,* 818 F.2d 49, 54–55 (D.C.Cir.1987).

did not intend to create a private right of action, no such right exists under § 1305.

Moreover, although § 1374(a) provides, in part, for safe and adequate service, this Circuit has held that this section also implies no private right of action. *Diefenthal v. C.A.B.*, 681 F.2d 1039, 1048–50 (5th Cir. 1982).

■■■ The Plaintiff is not left without recourse. Private parties may pursue administrative remedies and the Federal Aviation Administration or the Department of Transportation may bring suit directly. See *Anderson v. USAir Inc.*, 818 F.2d 49, 55 (D.C.Cir.1987).

This Court has subject matter jurisdiction over this action.

### 3. Preemption

The state law claims relating to the treatment of the passengers are preempted by 49 U.S.C.App. § 1305(a)(1). As noted above, the Federal Aviation Act and the ADA specifically preempt state law. *See Morales v. Trans World Airlines, Inc.*, — U.S. at —, 112 S.Ct. at 2037; *O'Carroll v. American Airlines*, 863 F.2d 11, 13 (5th Cir.), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989); *Baugh v. Trans World Airlines, Inc.*, No. 87–2611 (S.D.Tex. October 26, 1989) (Memorandum and Order), *aff'd per curiam*, 915 F.2d 693 (5th Cir.1990) (table).

Plaintiff's state law claims are properly dismissed.

### 4. Remand

■■■ With the dismissal of the British Airways from this action, federal subject matter jurisdiction ceases to exist. The remaining defendants have not claimed that plaintiff's state law claims are preempted as to them. Under these circumstances the appropriate course is to remand this case to state court for disposition of the nonfederal claims. See 28 U.S.C. § 1447(c). As the Ninth Circuit aptly stated:

> Where the federal head of jurisdiction has vanished from the case, and there has been no substantial commitment of judicial resources to the nonfederal claims it is ... akin to 'making the tail wag the dog' for the District Court to retain jurisdiction.... These considerations give rise to a discretion in the District Court to dismiss the complaint and remand the case to the State Court.

*Murphy v. Kodz*, 351 F.2d 163, 167–68 (9th Cir.1965).

In evaluating its own motion, this Court has considered the values of judicial economy and comity. Since there has been no substantial commitment of judicial resources, and since no federal questions remain, as the other defendants do not claim preemption protection because its application to them is doubtful, this action should be remanded to state court. See *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580 (5th Cir.1992).

### III. CONCLUSION

This Court, having considered all other contentions presented, concludes for the reasons set forth above, that Plaintiff's motion to remand should be denied as to Defendant British Airways. The Motion to Dismiss submitted by Defendant British Airways should be granted.

■■■ Plaintiff's subsequent motion for sanctions and attorneys fees is based on alleged defects in removal procedure; the defects were waived as the motion was not made within the statutory time limit. To the extent a ruling is necessary, this Court believes that British Airways sufficiently apprised this Court of its air carrier status, since it noted that it was a holder of a foreign air carrier permit.

The action against the remaining defendants should be remanded to the 129th Judicial District Court of Harris County, Texas, Cause No. 90–64163.