In re KOREAN AIR LINES CO., LTD. ANTITRUST LITIGATION.

MDL No. 1891.
No. CV 07–06542 SJO (AGRx).

United States District Court,
C.D. California.

July 23, 2008.

Christopher M. Burke, Kristen Marie Anderson, Scott and Scott, LLP, San Diego, CA, Elizabeth Lee Beck, Jared H. Beck, Beck and Lee Business Trial Lawyers, Miami, FL, Gregory S. Weston, Weston Firm, San Diego, CA, Mary Lynne Coughlin, Stoia Geller Rudman and Robbins, San Diego, CA, for Soon Ja Chun, Bernard Jung Kim, Eliabeth Bahn, plaintiffs.

J. Clayton Everett, Morgan, Lewis and Bockius, Washington, DC, for KLorean Air Lines Co., Ltd.

Ian Simmons, Alexander P. Okuliar, Angela Wilks, Predita Rostomian, O'Melveny and Myers, LLP, Washington, DC, Daniel N. Shallman, O'Melveny and Myers, Los Angeles, CA, Gerald A. Stein, O'Melveny and Myers, New York City, for Asian Airlines, Inc., defendant.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

S. JAMES OTERO, District Judge.

This matter is before the Court on Defendants Korean Airlines Co., Ltd.'s ("Korean Air") and Asiana Airlines, Inc.'s ("Asiana") Motions to Dismiss, both filed April 18, 2008. Plaintiffs Soon Ja Chun, Bernard Jung Kim, and Elizabeth Bahn (collectively, "Plaintiffs") filed a single Opposition, to which Korean Air and Asiana (collectively, "Defendants") each replied. The Court found the matter suitable for disposition without oral argument and vacated the hearing set for June 26, 2008. *See* Fed.R.Civ.P. 78(b). Because Plaintiffs' claims are preempted, the Court GRANTS Defendants' Motions.[1]

### I. BACKGROUND

Korean Air and Asiana are primary competitors in the air passenger market between the United States ("U.S.") and the Republic of Korea ("Korea"). (Second Am. Indirect Purchaser Class Action Compl. ("SAC") ¶¶ 24–25.) On August 1, 2007, the U.S. Department of Justice ("DOJ") charged Korean Air with conspiring with an unnamed co-conspirator from January 2000 to July 16, 2006, to fix prices on passenger flights from the U.S. to Ko-

---

1. Subsequent to the filing of Defendants' Motions, Plaintiffs filed, on July 1, 2008, a Motion to Submit Surreply to Defendants' Motion to Dismiss Indirect Purchasers' Second Amended Complaint. By Order of July 7, 2008, the Court granted Plaintiffs' Motion as to submission of new arguments on the preemption issue. The Court has considered Plaintiffs' arguments in reaching the instant ruling.

Plaintiffs' Motion also requested leave to add claims under the Sherman Act. By Order of July 22, 2008, the Court granted Plaintiffs' Motion as to consideration of this request. However, the Court denied the request, concluding that Plaintiffs may only assert state law claims.

rea. (SAC ¶ 31.) Korean Air pled guilty to the charges. (SAC ¶ 32.)

After the plea, numerous class-action lawsuits were filed against Korean Air and Asiana. These lawsuits were transferred to this Court for pretrial purposes, where they were divided into two consolidated actions: one for direct purchasers and one for indirect purchasers.

Plaintiffs filed their SAC on March 20, 2008, on behalf of two indirect purchaser classes. The first putative class encompasses all persons and entities who, "[from] January 1, 2000 through the conclusion of this matter (the 'Class Period')" (SAC ¶ 2), indirectly purchased airline tickets from Defendants in the U.S. that included "at least one flight segment" between the U.S. and Korea. (SAC ¶ 11(b).) Plaintiffs' first claim for relief is brought on behalf of this class (the "Cartwright Act Class") for violations of California's Cartwright Act. (SAC ¶¶ 70–77.)

The second putative class encompasses all persons and entities who reside in twenty listed states and the District of Columbia. (*See* SAC ¶ 11(a) (listing all twenty states).) Plaintiffs' second claim for relief is brought on behalf of this class (the "Indirect Purchaser State Class") for violations of the antitrust and consumer protection laws of the twenty states and the District of Columbia where these putative class members reside. (SAC ¶¶ 78–83.)

Defendants now move to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6) on the following grounds: (1) the Airline Deregulation Act ("ADA") of 1978 preempts Plaintiffs' claims; (2) Plaintiffs lack standing to assert claims based on the laws of states other than California and New York; (3) Plaintiffs lack antitrust standing; (4) Plaintiffs fail to allege a sufficient intrastate nexus to assert claims under the laws of sixteen states; (5) Plain-

tiffs' "Cartwright Act Class" claims violate due process; (6) Plaintiffs fail to state a claim under New York's Deceptive Trade Practices Act; (7) Plaintiffs fail to state a claim under Washington's Consumer Protection Act; (8) Plaintiffs fail to adequately plead that Defendants engaged in a price-fixing conspiracy; and (9) Plaintiffs fail to adequately plead fraudulent concealment.

## II. DISCUSSION

### A. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–200 (9th Cir.2003). A court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Dismissal is proper if the complaint lacks a "cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988). In pleading sufficient facts, a plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, —— U.S. ——, ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

### B. Plaintiffs' State Law Claims Are Preempted by the ADA.

Congress enacted the ADA in 1978 with the "clear and manifest purpose [of] ... achiev[ing] ... the economic deregulation of the airline industry." *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265 (9th Cir.1998) (en banc) (internal quotation marks omitted). "To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision" provid-

ing that "no State ... shall enact or enforce any law ... relating to rates, routes, or services of any air carrier having authority ... to provide air transportation." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); 49 U.S.C.App. § 1305(a)(1).

In 1994, Congress reenacted Title 49, slightly amending the ADA preemption provision. The relevant language now reads:

> [A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1).[2] "Congress intended the revision to make no substantive change." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 n. 1, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995); *see also* S.Rep. No. 103–265, at 5 (1994) ("[T]his bill makes no substantive change in the law ... [and does not] impair the precedent value of earlier judicial decisions and other interpretations.").

Drawing on the plain language of the statute and relevant decisional authority, Defendants argue that Plaintiffs' state law claims are preempted, requiring dismissal of the SAC. Plaintiffs counter on two main grounds: (1) the term "air carrier" excludes "foreign air carriers" such as Defendants; and (2) Plaintiffs' claims are not "related to a price ... of an air carrier...."[3]

■ In resolving these disputes, the Court is guided by familiar principles of statutory construction. "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006).

### 1. *The ADA Preemption Provision Extends to Foreign Air Carriers.*

The Federal Aviation Act ("FAA") of 1958, as amended by the ADA, defines an "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transporta-

---

**2.** "In this section, 'State' means a State, the District of Columbia, and a territory or possession of the United States." 49 U.S.C. § 41713(a).

**3.** Plaintiffs raise two additional counterarguments, neither of which is persuasive. First, Plaintiffs argue that Defendants have failed to show that they "may provide air transportation" within the meaning of the preemption provision. "Air transportation" is defined as "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." 49 U.S.C. § 40102(a)(5). To be authorized to provide air transportation in the form of "foreign air transportation," a foreign air carrier must secure a permit from the Secretary of Transportation. 49 U.S.C. § 41302. By the very nature of Plaintiffs' allegations, it appears beyond dispute that Defendants are so authorized.

Second, Plaintiffs argue that Defendants' price-fixing conspiracy constitutes "outrageous conduct," and as such, does not qualify for preemption. Plaintiffs rely on *Smith v. Comair, Inc.*, in which the Fourth Circuit held that "[s]uits stemming from outrageous conduct on the part of an airline toward a passenger will not be preempted under the ADA if the conduct too tenuously relates or is unnecessary to the airline's services." 134 F.3d 254, 259 (4th Cir.1998) (citing *Rombom v. United Air Lines, Inc.*, 867 F.Supp. 214, 222, 224 (S.D.N.Y.1994)). However, the question is not whether a defendant's conduct is outrageous; the relevant inquiry, as *Smith* itself indicates, is whether a defendant's conduct, outrageous or not, is "related to" a price, route, or service of an air carrier. This issue is addressed below.

tion." 49 U.S.C. § 40102(a)(2). The FAA separately defines a "foreign air carrier" as "a person, not a citizen of the United States, undertaking by any means, directly or indirectly, to provide foreign air transportation." 49 U.S.C. § 40102(a)(21). According to Plaintiffs, "[b]y specifying 'air carrier' and omitting 'foreign air carrier,' Congress clearly excluded 'foreign air carrier' from the scope of the [ADA] preemption provision." (Opp'n 7; *see also* Opp'n 8–9 (identifying fifty-one separate provisions of the FAA where "air carrier" and "foreign air carrier" are employed as distinct terms).)

■ Plaintiffs' argument would seem to end the analysis. *See Colautti v. Franklin*, 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) ("As a rule, a definition which declares what a term means ... excludes any meaning that is not stated.") (internal quotation marks omitted). However, as both parties recognize, "air carrier," as used in the ADA preemption provision, is modified by the phrase "that may provide air transportation under this subpart." Because interpretation of a statutory term depends on the context within which it is used, *see Bailey v. United States*, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) ("[T]he meaning of statutory language, plain or not, depends on context.") (internal quotation marks omitted), the Court must consider the impact of this modifying phrase upon the term "air carrier," *see United States v. Mehrmanesh*, 689 F.2d 822, 829 (9th Cir. 1982) ("[Courts] may not construe a stat-

ute so as to make any part of it mere surplusage.").[4]

According to Plaintiffs, the context in which "air carrier" is used in § 41713(b)(1) is "clearly one of limiting language." (Opp'n 13.) The modifying phrase serves to limit the universe of "air carriers" from those "citizen[s] of the United States undertaking ... to provide air transportation," 49 U.S.C. § 40102(a)(2), to those "citizen[s] of the United States undertaking ... to provide air transportation" who have received a certificate from the Department of Transportation authorizing them to do so, *see* 49 U.S.C. § 41101 ("[A]n air carrier *may provide air transportation* only if the air carrier holds a certificate issued under this chapter authorizing the air transportation.") (emphasis added).

Defendants, on the other hand, argue that the context in which "air carrier" is used in § 41713(b)(1) indicates that the term is to be construed broadly to include foreign air carriers. The definition of "air transportation" includes "foreign air transportation," which Defendants provide, and the relevant "subpart" governs economic regulation of foreign as well as domestic air carriers. Defendants also note that, if Congress had meant for the modifying language to limit air carriers to those authorized to provide air transportation, as Plaintiffs suggest, Congress would have used the phrase "air carrier holding a certificate" or "certified air carrier." (Asiana Reply 4 n. 8.)

4. The original version of the FAA expressly incorporated this canon of construction as to those terms, including "air carrier," that were defined therein. The predecessor section to § 40102, where the definition of "air carrier" is now found, began: "As used in this Act, *unless the context otherwise requires* ...." 49 U.S.C.App. § 1301 (emphasis added). Following the reenactment of Title 49, the provi-

so was dropped. The section now begins: "In this part...." Given Congress' statement that the reenactment effected no substantive change, it would seem that the proviso remains, albeit implicitly, in § 40102. *See Port Auth. of N.Y. & N.J. v. Dep't of Transp.*, 479 F.3d 21, 32 (D.C.Cir.2007) (assuming arguendo that the proviso is implicit in 49 U.S.C. § 40102).

Plaintiffs' reading of § 41713(b)(1) is persuasive at first glance. While foreign air carriers "may provide air transportation under this subpart," there is nothing inherent to this phrase suggesting, let alone requiring, that the term "air carrier" be interpreted more broadly than defined. Congress has elsewhere used similar modifying language and has expressly included the term "foreign air carrier" alongside the term "air carrier" to indicate the applicability of the provision to both types of carriers. *See* 49 U.S.C. § 44940(a)(2)(A) ("[T]he Under Secretary may impose a fee on air carriers and foreign air carriers engaged in air transportation...."). Had Congress wanted "foreign air carriers" to be covered by the preemption provision, it could have simply said so.

However, the term "air carrier" is not immune to a construction that would include "foreign air carriers." *See* 49 U.S.C. § 41705 ("In providing air transportation, an air carrier, *including ... any foreign air carrier*, may not discriminate against an otherwise qualified individual ....") (emphasis added). Although § 41713(b)(1) makes no mention of "foreign air carriers," the provision's modifying language does not plainly exclude them, as other modifying language might. Indeed, § 41713 includes a subsequent reference to "an air carrier holding a certificate issued by the Secretary of Transportation," 49 U.S.C. § 41713(b)(3), which unambiguously applies only to domestic air carriers, as foreign air carriers hold "permits," not "certificates," *see* 49 U.S.C. §§ 41101, 41301. This use of different modifying phrases within § 41713 suggests, perhaps, different constructions of the term "air carrier." *Cf.*

*A–1 Ambulance Serv., Inc. v. California,* 202 F.3d 1238, 1245 (9th Cir.2000) ("[O]ne may presume that Congress acted intentionally in including the modifying language in one clause, but omitting it in another.").[5]

In light of the above, it is not entirely clear whether the term "air carrier" as used in § 41713(b)(1) includes "foreign air carriers." While the scales seem to tip in Plaintiffs' favor given the statute's explicit definition of "air carrier" and the fact that the modifying language does not, by necessity, warrant a broader interpretation, the Court is unable to conclude, on the face of the statute alone, that "foreign air carriers" are excluded. Upon inspection of relevant decisional authority, however, the answer is much clearer: the case law has been unambiguous in its application of the provision to foreign air carriers.

Defendants cite more than a dozen cases that have applied the ADA to preempt state law claims brought against foreign air carriers. *See, e.g., Morales,* 504 U.S. 374, 112 S.Ct. 2031; *Buck v. Am. Airlines, Inc.,* 476 F.3d 29, 31–32 (1st Cir. 2007); *Read–Rite Corp. v. Burlington Air Express, Ltd.,* 186 F.3d 1190, 1197 (9th Cir.1999); *Trans World Airlines, Inc. v. Mattox,* 897 F.2d 773 (5th Cir.1990), *aff'd in part, rev'd in part sub nom. Morales,* 504 U.S. 374, 112 S.Ct. 2031. With the exception of one case, discussed below, these cases do not specifically address whether § 41713(b)(1) includes "foreign air carriers." This silence, however, does not undercut the precedential value of these cases as to this issue. As noted by the Ninth Circuit, "[o]bviously, an action is

---

**5.** Plaintiffs could argue that the reference in § 41713(b)(3) to "an air carrier holding a certificate issued by the Secretary of Transportation" reaffirms Congress' intent that the preemption provision applies only to domestic air carriers. However, such a position fails to explain why Congress chose to use two differ-

ent modifying phrases. Further, it does not explain the subsequent reference in § 41713 to "an air carrier *or carrier* affiliated with a direct air carrier," which would seem to include "foreign air carriers." *See* 49 U.S.C. § 41713(b)(4)(A).

preempted only if it satisfies the other requirements of [§ 41713(b)(1)]." *Duncan v. Nw. Airlines, Inc.*, 208 F.3d 1112, 1114 n. 5 (9th Cir.2000). Because a finding of preemption under § 41713(b)(1) depends upon a finding that the defendant is an "air carrier," the latter finding is implicit where the former is expressly stated. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1203–04 (9th Cir.2004) ("We are bound to follow the implicit, but necessary, holding of our decision in *Seattle Audubon Society*.").[6]

This conclusion is supported by the lone case to squarely address the scope of "air carrier" in the ADA preemption provision, *Lawal v. British Airways, PLC*, 812 F.Supp. 713 (S.D.Tex.1992). *Lawal* analyzed the language of the pre–1994 provision, which used the phrase "any air carrier." The court found that "the prefatory use of the word 'any' would be mere surplusage" if the provision was read to only apply to domestic air carriers. *Id.* at 717. Additionally, the court noted that the modifying language extended to "various types of carriers, including foreign air carriers." *Id.* at 718. The court concluded that "[t]he preemption provisions of the ADA clearly apply to foreign air carriers." *Id.* at 718. This holding has not been criticized, and remains good law today.[7]

In sum, while the plain language of the ADA preemption provision arguably suggests that "air carrier" is limited to domestic air carriers, Plaintiffs fail to explain why this Court should ignore the uniformity of opinion holding to the contrary. Plaintiffs also fail to explain why the policy considerations behind the ADA warrant preemption only as to claims against domestic air carriers. "When Congress enacted *federal* economic deregulation of the airlines, it intended to insulate the industry from possible *state* economic regulation as well." *Charas*, 160 F.3d at 1266. Preemption was designed "to maintain uniformity and to avoid the confusion and burdens that would result if interstate and international airlines were required to respond to standards of individual states." *Mattox*, 897 F.2d at 787. For the reasons stated above, and in the absence of any compelling policy reasons to the contrary, the Court holds that "air carrier," as used in § 41713(b)(1), includes "foreign air carriers" such as Defendants.

2. *Plaintiffs' State Law Claims Are "Related" to a Price of an Air Carrier.*

The preemption provision's requirement that state law claims be "relat-

---

**6.** In *Morales*, petitioner raised this exact issue in his reply brief, but the Court did not discuss it in its opinion. Plaintiffs read this silence as a refusal on the Court's part to consider the issue. However, given the centrality of the issue to the petitioner's claims against foreign air carriers, the Court's silence is more appropriately read as a rejection of the petitioner's argument that the provision only applies to domestic air carriers.

**7.** Despite the slight alteration of the language of the preemption provision, Congress clearly stated its intention to effect "no substantive change" and to leave existing precedent undisturbed. *See* S.Rep. No. 103–265, at 5; *see also Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ("Congress is

presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."). The two cases cited by Plaintiffs for the proposition that *"Lawal* has been repeatedly criticized or distinguished" (Opp'n 16), *Khan v. Am. Airlines*, 266 Ill.App.3d 726, 203 Ill.Dec. 171, 639 N.E.2d 210 (1994), and *Singh v. N. Am. Airlines*, 426 F.Supp.2d 38 (E.D.N.Y.2006), are inapposite as they deal with unrelated aspects of *Lawal's* holding. Indeed, *Lawal's* holding was recently endorsed by the D.C. Circuit in *Port Authority. See* 479 F.3d at 32 n. 6 (stating that *Lawal* dealt with a statutory provision "that referenced outside language supporting a broad definition" of the term "air carrier").

ed to ... a price of an air carrier" is to be broadly construed. *See Morales,* 504 U.S. at 383, 112 S.Ct. 2031 (stating that, like the "similarly worded pre-emption provision of the Employee Retirement Income Security Act of 1974 (ERISA)," the ADA provision "express[es] a broad pre-emptive purpose"); *id.* at 384, 112 S.Ct. 2031 (describing the "sweeping nature" of the provision's "relating to" language).[8] Several considerations guide the analysis:

> In *Morales,* the Court determined: (1) that "[s]tate enforcement actions *having a connection with, or reference to* " carrier " 'rates, routes, or services' are preempted," [504 U.S., at 384, 112 S.Ct., at 2036–37] (emphasis added); (2) that such pre-emption may occur even if a state law's effect on rates, routes or services "is only indirect," [*id.* at 386, 112 S.Ct. 2031] (internal quotation marks omitted); (3) that, in respect to pre-emption, it makes no difference whether a state law is "consistent" or "inconsistent" with federal regulation, [*id.* at 386–87, 112 S.Ct. 2031] (emphasis deleted); and (4) that pre-emption occurs at least where state laws have a "significant impact" related to Congress' deregulatory and pre-emption-related objectives, [*id.* at 390, 112 S.Ct. 2031].

*Rowe v. N.H. Motor Transp. Ass'n,* — U.S. ——, 128 S.Ct. 989, 995, 169 L.Ed.2d 933 (2008). Where state actions affect airline fares "in too tenuous, remote, or peripheral a manner," they will not be preempted. *Morales,* 504 U.S. at 390, 112 S.Ct. 2031 (internal quotation marks omitted).

■ Here, Plaintiffs seek, through various state antitrust and consumer protection laws, to regulate the manner by which Defendants set fares, or components of fares, for air transportation services. (*See* SAC ¶¶ 72, 79 ("Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for Passenger Airfares and their components sold in the United States in violation of various state laws.").) These claims are plainly "related to ... a price of an air carrier"; the enforcement target is a *price-fixing* conspiracy. *See, e.g., Morales,* 504 U.S. at 383, 112 S.Ct. 2031 (holding that "enforcement of ... guidelines on fare advertising through a State's general consumer protection laws is pre-empted by the ADA"); *In re Jetblue Airways Corp. Privacy Litig.,* 379 F.Supp.2d 299 (E.D.N.Y.2005) (finding that a claim based on violations of various consumer protection statutes was "expressly preempted by the ADA, because it represent[ed] a direct effort to regulate the manner in which [the defendant airline] communicate[d] with its customers in connection with reservations and ticket sales, both of which are services provided by the airline to its customers."). That Plaintiffs' claims may be consistent with the ADA's goal of promoting market competition is of no import:

> Plaintiffs argue that because the ADA was designed to promote maximum reliance on competitive market forces, it cannot be read to preempt their state-law claims, which, in effect, are aimed at fulfilling those goals.... Yet, plaintiffs misapprehend the function of the ADA's express preemption provision, for that provision represents Congress's decision to promote competition by affirmatively foreclosing state participation in the reg-

---

**8.** "The version of the ADA in effect when the Court decided *Morales* used the phrase 'relating to' in place of the phrase 'related to' (used in the current version).... [T]his slight change in terminology ... had no substantive effect on the provision and does not undercut the precedential value of *Morales.*" *Buck,* 476 F.3d at 34 n. 6.

ulation of the price, route, or service, of an air carrier whether or not that participation purports to be consistent with the ADA. Thus, state fair competition laws, such as those at issue here, serve to regulate competition and are precisely what the ADA's preemption clause was designed to prevent

*Cont'l Airlines, Inc. v. United Air Lines, Inc.*, 120 F.Supp.2d 556, 572–73 (E.D.Va. 2000); *see id.* at 572 ("[P]laintiffs' claims, which challenge defendants' agreement to restrict the size of carry-on baggage ...", clearly relate to 'services of an air carrier' that a state law may not regulate under the ADA.") (quoting 49 U.S.C. § 41713). State laws that regulate the manner by which airlines set fares, by means anticompetitive or not, "fall within" the ADA's preemptive "sphere." *See Morales*, 504 U.S. at 387, 112 S.Ct. 2031.[9]

Plaintiffs argue that such a result " 'give[s] [Defendants] carte blanche to ... unjustly enrich themselves willy-nilly.' " (Opp'n 21 (quoting *In re Air Transp. Excise Tax Litig.*, 37 F.Supp.2d 1133, 1140 (D.Minn.1999)).) To the contrary, Defendants still face the consequences of violating federal antitrust law. *Cf. Morales*, 504 U.S. at 390–91, 112 S.Ct. 2031 ("[O]ur decision does not give the airlines *carte blanche* to lie to and deceive consumers; the [Department of Transportation] retains the power to prohibit advertisements

which in its opinion do not further competitive pricing."). As both parties are aware, the Court is now presiding over such a suit. (*See* CV 07–5107 SJO (AGRx).)

Because the Court finds that Plaintiffs' claims are "related to ... a price of an air carrier" under § 41713(b)(1), they are preempted.[10]

## III. *RULING*

For the foregoing reasons, the Court GRANTS Defendants' Motions; the SAC is DISMISSED with prejudice.

IT IS SO ORDERED.

---

9. Plaintiffs urge the Court to follow *Abdu–Brisson v. Delta Airlines, Inc.*, in which it is suggested that the Supreme Court's recent narrowing of the scope of the ERISA preemption provision should carry over to the ADA provision. 128 F.3d 77, 82–83 (2d Cir.1997). However, "[o]ther courts have been understandably reluctant to narrow the Supreme Court's preemption analysis in *Morales* based upon subsequent interpretations of the ERISA provision." *Jetblue Airways*, 379 F.Supp.2d at 315 n. 11 (citing *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 608 (7th Cir.2000)) (Easterbrook, J.) ("[I]f develop-

ments in pension law have undercut holdings in air-transportation law, it is for the Supreme Court itself to make the adjustment. Our marching orders are clear: follow decisions until the Supreme Court overrules them."). Indeed, the Supreme Court's most recent discussion of the ADA provision does not indicate a retreat from the standard as articulated in *Morales*. *See Rowe*, 128 S.Ct. at 995.

10. Thus, the Court does not reach the remaining arguments in Defendants' Motions.