Tibbs *et al. v.* Allen.

---

Quintus Tibbs *et al.*, Plaintiffs in Error, *v.* Charles H. Allen, Defendant in Error.

ERROR TO SANGAMON.

Striking a cause from the docket does not deprive the court of jurisdiction over it, but it may be reinstated on motion, or by supplemental petition, after due notice has been given to the proper parties. This is a matter resting in the discretion of the court, and the mere lapse of time is not sufficient to prevent the exercise of that discretion.

It is error for the Circuit Court to confirm a sale of land made by commissioners in partition unless the requirements of the statute have been complied with.

Some proof, independant of the assertion of the commissioner, must be made, that public notice was given of a sale of lands in partition, otherwise it is error to confirm the sale.

On the 29th of April, 1859, an order was made in the Sangamon Circuit Court, before RICE, Judge, that this cause, which had been off the docket of said court since about the year 1849, should be and it was reinstated, and Erastus Wright, who had been appointed commissioner in that cause out of which the proceedings herein originated, then on said 29th April, 1859, filed a report entitled *Charles H. Allen* v. *Amelia Allen et al.* In partition, decree of November term, 1848; in which report Wright states, that he advertised the premises for sale at the court-house door in Springfield on 3rd January, 1849, by advertisement in the "Illinois Journal," for twenty days; that on that day he sold in parcels, several pieces of land, describing them; that the rest of the lands named in the decree were offered but not sold on that day.

That 25th September, 1859, after twenty days' notice in the "Illinois Journal," said commissioner sold east half of southeast quarter of Section 33, Township 16 north, Range 5 west, to Partricius Moran, for $2,000, and north-west quarter of south-west quarter of Section 28, same town and range, for $1,000 to said Moran; and east half of south-west quarter of Section 21, same town and range, to Hiram Walker, for $209, likewise west of third principal meridian. Said sales were for cash, which purchasers paid at date of sales, and deeds were made for said tracts to purchasers.

With said report was filed a notice of sale on 3rd of January, 1849, dated 5th December, 1848, of several other tracts of land. The first notice entitled *Charles H. Allen* v. *Amelia Allen, Amelia Jane Tibbs, Jane Tibbs, Quintus Tibbs, George Anne Allen, Orrick Allen, Laura Allen, Frank V. Allen and Tandy Allen.* The second notice entitled *Charles H. Allen* v. *Amelia Allen, Orrick S. Allen, Quintus C. Tibbs, Amelia ———, Robert L. Wood, Georgiana Wood, Bela M. Hughes, Laura Hughes, Francis V. Allen and Tandy Allen.*

On 12th May, 1860, a decree was entered, reciting that it was suggested, that since the decree herein, Georgiana Allen had married Robert L. Wood; that she had died intestate; that William Wood, Elizabeth Wood, Ella Wood and Minnie Wood, minors, were her heirs. That Laura Allen had married

Bela M. Hughes; that Tandy Allen had married Woodhull Vandoren; that Frank V. Allen had died intestate and un-married, and that all said named persons, as well as original defendants, were non-residents. It was ordered that the clerk give notice to defendants, by publication for sixty days before next term, in some paper in Springfield, to Bela M. Hughes, Laura Hughes, Robert L. Wood, William Wood, Elizabeth Wood, Ella Wood, Minnie Wood, Woodhull Vandoren, Tandy Vandoren, Orrick S. Allen, Charles H. Allen, Quintus Tibbs, Francis Allen and Amelia Jane Tibbs, and cause was continued.

On 12th May, 1860, an affidavit was filed, made by Milton Hay, stating that Laura Allen had married Bela M. Hughes, that Georgiana Allen had married Robert L. Wood, and had since died intestate, leaving William Wood, Elizabeth Wood, Ella Wood and Minnie Wood, all minors, her heirs-at-law; that Tandy Allen married Woodhull Vandoren, and that Frank V. Allen had died intestate and unmarried, and that all said persons who are living are non-residents.

On 19th November, 1860, a motion was entered by said court on behalf of Quintus Tibbs, Amelia J. Tibbs, Laura Hughes, Bela M. Hughes, Mrs. Amelia Allen, Tandy Van-doren and Woodhull S. Vandoren, that Erastus Wright, Commissioner, bring into court the proceeds of said sales with interest, said parties at same time resisting approval of sale, and asking for such order only in event of approval of sale.

On 17th November, 1860, a notice was filed, that Bela M. Hughes, Laura Hughes, Robert L. Wood, William Wood, Elizabeth Wood, Ella Wood, Woodhull Vandoren, Tandy Vandoren, Orrick S. Allen, Charles H. Allen, Amelia Allen, Quintus Tibbs, Francis Allen and Amelia J. Tibbs, were notified that report of sale had been filed, and that motion for confirmation was continued until fourth Monday in August, 1860, certificate of publication with same.

On 19th November, 1860, the affidavit of Jackson Grimshaw was filed, stating change of parties and pendency of writ of error.

35

On said 19th November, 1860, reasons for resisting the confirmation of said report were filed.

On 19th November, 1860, court ordered publication of notice of pendency of motion, and that cause be continued because notice was defective.

On 25th June, 1861, a notice, with certificate of publication, was filed to Bela M. Hughes, Laura Hughes, Robert L. Wood, William Wood, Elizabeth Wood, Ella Wood, Minnie Wood, Woodhull Vandoren, Orrick S. Allen, Charles H. Allen, Amelia Allen, Quintus Tibbs, Francis Allen and Amelia Jane Tibbs, to appear to next term of Sangamon court, on fourth Monday of April, 1861, to consider exceptions to report.

On 14th November, 1861, exceptions to report heard and taken under advisement.

On 16th November, 1861, exceptions heard and overruled, and report approved and ordered to be recorded, and commissioner ruled to return proceeds, or show cause by next term of court. By agreement, certificate of evidence on hearing of motion to be made by third day of next term.

On 20th April, 1862, at the next term of said court, the following certificate was filed:

" Be it remembered, that on the hearing of the motion in this case at October term of said court, 1861, the following reasons and exceptions were presented against the granting of said motion and confirmation of said report, said exceptions having been filed in this court on 17th November, 1860:

CHARLES H. ALLEN,
*vs.*
AMELIA ALLEN, QUINTUS  } Circuit Court of Sangamon county, State of Illinois.
TIBBS, AMELIA JANE
TIBBS *et al.*

"Said defendants, Quintus Tibbs, and Amelia Jane Tibbs, his wife; Amelia Allen, widow; Laura Hughes, Bela M. Hughes, her husband; Woodhull S. Vandoren and Tandy Vandoren, his wife; and Robert L. Wood, husband of the late Georgiana Allen, for and in behalf of his minor children, born of his said intermarriage with the late Georgiana Allen, to wit: William Wood, Elizabeth Wood, Ella Wood and

Minnie Wood, except to the report of Erastus Wright herein filed, for following reasons :

" First. That there is now pending in the Supreme Court of this State, as shown by the affidavit herein filed, a writ of error presented to reverse the decrees herein for the errors set forth in said affidavit ; and the existence of those errors in this record, and pendency of such writ of error, are sufficient reasons why said report should not be approved.

" Second. The parties in the cause by deaths and inter-marriages have been changed, and no proper parties to said cause are now in court, or properly in this record.

" Third. No order approving said report should be made without bringing, by proper bill before the court, the parties in interest whose names are disclosed by said affidavit.

" Fourth. No proper notice has been given to the parties in interest of the presenting said report for approval.

" Fifth. Said report should not now be approved after the great length of time that has passed since said pretended sales.

" Sixth. There is no proper evidence that said pretended sales were ever advertised.

" Seventh. Said proceedings, as appears by the record, are in many respects erroneous, and are void, and did not authorize a sale of said premises.

" Eighth. No attempt is made to account for the delay in reporting such pretended sales.

" Ninth. The commissioner, after retaining the proceeds of sales for many years, now asks a confirmation of sales without accounting for delay.

" Tenth. Such report is in other respects illegal and insufficient.

E. B. HERNDON & GRIMSHAW,
For the above parties."

" In the foregoing case, said parties move the court for a rule on Erastus Wright, commissioner, to bring into court the proceeds of said sales, together with interest thereon from the time of receiving such proceeds, or that such amount be deposited in some safe hands pending the motion and subject to the order of court.

E. B. HERNDON & GRIMSHAW,
For above parties."

And at the same time on the hearing of the motion, the following affidavit was presented and read, in order further to resist the granting of said motion and the confirmation of said report.   Said affidavit having been filed on the 19th November, 1860:

" CHARLES H. ALLEN, Complainant,
                     *vs.*
AMELIA ALLEN, QUINTUS TIBBS,     Circuit Court, Sangamon county, Illinois.
   AMELIA J. TIBBS, and others.

" Jackson Grimshaw, being first duly sworn, deposes and says, that he is one of the attorneys of Laura Hughes, formerly Laura Allen, and wife of Bela M. Hughes, and also one of the attorneys of said Bela M. Hughes, the said Laura being a defendant in said cause, as will appear by the record therein.

" Said affiant states, in behalf of said Laura and Bela M. Hughes, that Georgiana Allen, one of defendants, on 19th day of December, A. D. 1848, married Robert L. Wood; that said Georgiana, on sixth day of February, A. D. 1859, died, leaving surviving her the following minor children, born of such marriage and her only heirs at law, to wit: William Wood, Elizabeth Wood, Ella Wood and Minnie Wood.   That said Laura Allen, on 5th day of June, 1859, married said Bela M. Hughes.   That Tandy Allen, one of said defendants, married Woodhull S. Vandoren, on the 22nd day of August, A. D. 1854.   That Frank V. Allen, on 4th day of June, A. D. 1854, died, intestate, unmarried and without issue.   Affiant further states, that there is now pending in the Supreme Court of the State of Illinois, for the Second Grand Division, a writ of error to the court upon record in this cause, prosecuted by Quintus Tibbs, and Amelia J. Tibbs, his wife, impleaded with Amelia Allen, Georgiana Allen, Orrick S. Allen, Laura Allen, Frank T. Allen and Tandy Allen, plaintiffs in error, against Charles H. Allen, defendant in error; said writ of error being returnable to the next ensuing term of said Supreme Court, to be held in January, 1860.   The errors assigned on said record are as follows:

" That this court permitted the answer of a guardian *ad*

*litem* to be filed for minors, without any order appointing a guardian.

" In rendering decree for partition and sale, without service of process or affidavit of non-residence and due publication of notice.

" In rendering the decree in the cause against defendants without notice either actual or constructive.

" In rendering decree against minor defendants without proof of allegation in bill.

" In ordering commissioner to assign dower to Amelia Allen when the bill contained no prayer, either general or special, for such assignment.

" In ordering partition of land amongst heirs of Allen, and assignment of dower to widow in such manner by decree as to give widow's dower one-third in fee.

" In decreeing a report upon insufficient report of commissioner.

" In ordering a sale upon a report which shows that commissioner did not go upon the premises, and in which they do not report that premises are so situated that partition cannot be made, but that 'from the circumstances surrounding the pecuniary condition of the family, and the locality of the land, such lands cannot be divided.'

" In ordering partition and sale without fully adjudicating upon rights of all parties to suit.

" In ordering partition and sale and establishing interest of Amelia Allen, the widow, to the one-third, when by law her share was a mere dower interest.

" In ordering a sale as well for benefit of Amelia Allen, the doweress, as of the other parties, instead of ascertaining the yearly value of such dower, and ordering a sale subject to such yearly value.

" In ordering a sale without disposing of the interest of Amelia Allen, the doweress.

" Affiant states that he is one of the attorneys engaged in the prosecution of said writ of errors, and assigned said errors.
JACKSON GRIMSHAW."

Said commissioner Wright, on hearing of said motion and

application to confirm his said report, read on said hearing the following notice and certificate :

" STATE OF ILLINOIS, } *ss.*   April Term, A. D. 1861.   In partition.
SANGAMON COUNTY,

CHARLES H. ALLEN, Complainant,
*vs.*
AMELIA ALLEN, ORRICK S. ALLEN, QUINTUS TIBBS,
AMELIA JANE TIBBS, GEORGIANA ALLEN, LAURA
ALLEN, FRANK V. ALLEN and TANDY ALLEN,
Defendants.

" Bela M. Hughes, Laura Hughes, Robert L. Wood, William Wood, Elizabeth Wood, Ella Wood, Minnie Wood, Woodhull S. Vandoren, Tandy Vandoren, Orrick S. Allen, Charles H. Allen, Amelia Allen, Quintus Tibbs, Francis Allen, and Amelia Jane Tibbs, are notified that a report of the sale made in partition in said cause has been filed therein, and a motion has been made therein for the approval of said report of sale by the court, and which said motion is now pending in said cause in said court, and stands continued for hearing till the next term thereof, to be holden at the court-house in the city of Springfield, in the county of Sangamon and State of Illinois, on the fourth Monday of April, A. D. 1861, at which time all objections or exceptions to said report will be considered.

S. S. WHITEHURST, Clerk."

M. HAY, for Complainant.

" STATE OF ILLINOIS, } *ss.*
CITY OF SPRINGFIELD,

" We the undersigned publishers of the " Illinois State Journal," a public newspaper printed in the city, county and State aforesaid, do hereby certify that a notice of which the annexed is a true copy, has been regularly published in said paper four weeks, in succession, commencing on the 20th day of February, 1861, and ending on the 13th day of March, 1861. Given under our hands at the city of Springfield, aforesaid, this 25th day of June, 1861.

" Printers' fee, $5.00.                  BAILHACHE & BAKER."

The following errors were assigned :

In reinstating on its docket and entertaining jurisdiction there of a cause that had been off its docket, and out of its jurisdiction, for more than ten years.

In entering decrees and orders in a cause over which it had no jurisdiction.

In entertaining jurisdiction in a cause in which the parties in interest were not before it by due process of law.

In making new parties to a cause without proper bill, and merely on motion, and that after many years delay not accounted for.

In entering decrees in a cause in which it had no jurisdiction over the persons of the defendants.

In entertaining jurisdiction and making decrees in a cause where there had been, as shown by the record, almost an entire change of parties in said cause.

In entering any order or decree in said cause while a writ of error was shown by its record to be pending here in this court.

In not sustaining each and every exception to said report taken and embodied in the record herein.

The court erred in entering each and every order and decree in said cause.

· In entertaining decrees in said cause without proof of publication of notice of said sales ; and without proof of notice that the parties were in court, whose interests were to be affected by its decrees.

In entering and ordering an order approving the sales reported by said commissioner, Erastus Wright.

GRIMSHAW & WILLIAMS, and E. B. HERNDON, for Plaintiffs in Error.

This court, at its last term, reversed the decree in this cause on the errors assigned. We refer to the opinion in that case. The case was reversed on the errors assigned, after argument.

Pending the writ of errors, the present proceedings were had. Errors have not been joined, but the present plaintiffs in error, instead of reversing for non-joinder, wish a decision upon the merits as presented upon the present record. While a writ of error was pending to reverse a decree in partition, somebody (the record shows, that it was the defaulting commissioner, Erastus Wright,) commenced this attempt to fore-

stall the action of this court by procuring pending the writ of error, and when that fact was proved in the record, an approval of the same made by the commissioner ten years before, which he had never reported, and when he had, after concealing his sale for ten years, kept the money up to and since the confirmation of sale. Not a cent of the sale money is shown to have been paid over; not a cent has ever been paid over; the whole thing was a grand scheme of peculation. No person moved to report a sale until the writ of error under which decision was made at the last term of this court, and no person ever would have moved in the matter, but for that writ of error. The larceny for ten years was supposed to be " an accomplished fact," but when a writ of error was prosecuted, the present anomalous proceeding was commenced, but no money was forthcoming. We ask, where is the law that permits a court, after a cause has passed off the docket, to reinstate that case on its docket without personal notice to the parties interested ?

The provisions of our laws for constructive notice by publication, are confined to special cases—none of the provisions in terms provide for galvanizing a case dead for years, by publication of notice. Suppose a defect in an attachment case, where is the law for publishing a notice to either party, that the other proposes on motion to correct or modify the record ? Where is the law which provides for that species of constructive notice to the original parties to the record ? We answer, that it cannot be found, and that even as against the original parties to the record, such proceedings would be *coram non judice* unless personal notice was given.

This case is stronger, however. The abstract is full, and we will not repeat it. The record shows, first, an attempt by publication to get the original parties into court. When the suggestion is made in the record, that the parties, by deaths and marriages, have all changed, then an attempt is made to get in new parties by publications—each successive notice, being an advertisement for new parties not in the original record.

Now, if the case had remained on the docket, *in fieri*, steps

might have been taken to make parties under our abatement law, and the practice under it, but it had gone out of court, and when the attempt was made to get it back, the parties in interest had changed entirely.   Where, we ask, is the law to conclude their interest on motion after a lapse of ten years, and to make them parties to a cause in court, on motion by publication ?   The defendant in. error, or those interested under sale, had no remedy except by bill properly filed, with new parties made, if any remedy existed.

The whole of the present proceeding was a budget of blunders, and those who got it up were ashamed to face the parties in interest, by arguing the case in this court.   The names of parties will be found to have been changed at every step, and the whole proceeding is without legal sanction.   We can refer to no authorities on this point, because the attempt is one of " first impression."   There is no other case like it.

Suppose, however, that no change of parties had occurred, the title never passed until a confirmation of the sale was had.

Ten years had elapsed without the payment of money arising from pretended sale by the commissioner.   No reason is given for failure to report sale.   There is no proof of compliance with terms of sale by advertisement or otherwise, except by report of Erastus Wright, the commissioner.   Did he ever advertise ?   Did he ever sell ?   After ten years, he reports that he did advertise and sell, but the whole statement rests upon Wright's report made after ten years delay. He does not account for that delay, nor does he corroborate his report in any manner.

Sales of this class are under the control of the court, unless confirmed by the court.   *Coffee* v. *Coffee,* 16 Ill. 144, and cases therein cited.

Had these sales been promptly reported, opportunity would have been afforded the parties in interest to have resisted the confirmation of report, and to have shown the facts upon which such resistance was based.   But no report of sales was made, and the lapse of time puts it out of the power of the parties to show irregularities or improprieties in the sale.

The delay is not accounted for. The parties in interest should not be deprived of their rights by delay over which they had no control. The rights of minors and married women should not be prejudiced by such laches, when no account is given of delay.

The Circuit Court, by the affidavit presented, and by its duty to notice writs of error pending to its proceedings, knew that the cause in which it was asked to confirm this sale, ten years old and only just reported, was pending on error in this court. Yet it confirmed these sales upon the simple report of the commissioner Wright.

" The theory of sales of this character is, that the court is itself the vendor, and the commissioner or master its mere agent in executing its will. The whole proceeding, from its incipient stage up to the final ratification of the reported sale, and the · passing of the title to the vendee and the money to the person entitled to it, is under the supervision and control of the court. The court will confirm or reject the reported sale, or suspend its completion, as the law and justice of the case may require." *Tooley* v. *Kain et al.,* 1 Smedes and Marshal's Ch. R. 522.

Apply this rule, and we have a Circuit Court approving a report—of a sale ten years unreported—no money paid—no reason given for the delay ; all the facts stated in report resting upon the uncorroborated statement of the commissioner, and all the proceedings had pending a writ of error brought home to the knowledge of the Circuit Court, and that writ of error resulting in a reversal of the decree upon which this pretended sale was based.

M. HAY, for Defendant in Error.

BREESE, J. A very important question is presented by the first error assigned. Great interests are involved in its decision, and it has received from us the most careful consideration.

The proposition is, that striking a cause in partition from the docket, after a final decree has been entered, and a

sale of the lands made by the order of the court, removes it
entirely from the jurisdiction of the court.   Should the
removal from the docket have this effect?   From analogy, in
criminal cases, it should not have such effect.   In those cases,
a practice has long obtained in this State, now near half a
century, after ineffectual attempts to arrest a defendant in an
indictment, to remove, on motion of the State's attorney, the
cause from the docket, with leave to reinstate it on his own
suggestion, at any future time.   It is all one motion; to
remove, subject to be reinstated, thereby excluding the con-
clusion that the case is at an end, but implying that it is still
subject to the action of the court.   It may be urged, that
the order in this case reserves no right to reinstate; that it is,
in terms, so peremptory as to amount to a discontinuance,
leaving a party interested, to conclude, from an inspection of
the record, that the cause was out of court.   This may be so,
he may so conclude, yet the jurisdiction of the court may
remain.   When this cause was stricken from the docket, it
had proceeded to a decree for a sale of the lands, and a com-
missioner was appointed to make the sale.   Thus the case
stood, the only remaining act to be done, being the production
of the report of the sale by the commissioner.   At this time,
persons, other than the parties to the suit, had become inter-
ested by the purchase of the lands.   To preserve their interests,
what should forbid the court, on their motion, or on that of
the original petitioners, or any interested party, to re-docket
the cause for the purpose of receiving his report, on proper
notice being given, or for any other necessary purpose?   The
suit had not been formally dismissed, discontinued, or aban-
doned in terms.   Great latitude must be allowed the courts in
such cases, so that the ends of justice may be promoted.   We
may say, a discretionary power was vested in the court, to
allow or not, a motion to reinstate.   A court may abuse a
discretionary power, or exercise it illegally.   We are not
inclined to think, this is a case wherein a discretion has been
exercised, in a manner not warranted by law.   On a motion
to reinstate a cause which had been stricken from the docket,
the time when it was done, may be an element to take into

consideration. Should but a term or two have intervened, between the motion to strike from the docket, and the motion to reinstate, even in such case, notice of the motion should be given, either actual or constructive. This is indispensable. Where, as in this case, a peremptory order had been made of record, with no reservation, and ten years have elapsed, during the whole of which time the cause lay dormant, if not dead, a supplemental petition might be the better course, setting forth all the proceedings up to the time of filing it, and the parties in interest called upon to appear and make their objections to the final report, if that be the only act remaining to be done, or otherwise, as the state of the case may have been, when it was stricken from the docket, and some reason should be assigned, perhaps, why it was stricken from the docket. Of this petition due notice should be given in the mode prescribed by law, and the court, in the exercise of its discretion, if satisfied that the cause had not been stricken from the docket for an illegitimate purpose, would reinstate it. We are of opinion, that striking the cause from the docket, did not deprive the court of jurisdiction over it, to reinstate it, but that it could be reinstated, on motion, and notice, or by supplemental petition and notice. Due notice of this motion to reinstate the cause was given, and lapse of time should not bar the exercise of this discretionary power, or prevent the court from confirming the sale. *Harvey, Guardian of the Heirs of Sweet*, 16 Ill. 131.

We will now consider, briefly, the action of the court upon the report of the commissioner. Approving the report of sale, involved the approval of the report of the three commissioners, appointed to make partition of these lands, and the order of the court thereupon, directing a sale. This court decided in the same case, *Tibbs et al.* v. *Allen*, 27 Ill. 128, that the Circuit Court was not justified in ordering a sale on the report of those commissioners—that it was not only not in accordance with the statute, but in the face of the statute. We cannot take this back, as we remain of the opinion then expressed. It was an error then to confirm the sale, based, as it was, upon proceedings deemed illegal and in contravention of the statute.

It may be further remarked, that no proof whatever was furnished the court by the commissioner making the sale, that he had given any public notice of the sale. His mere statement sufficed. This was erroneous. Some proof, other than his assertion, should have been required; at least a copy of the notice, with the affidavit of some credible person that he saw it posted in some public place, or, if printed in a newspaper, the usual certificate of the printer, should have been required.

The order of the Circuit Court confirming the sale of these lands is reversed.

*Judgment reversed.*