TARIQ W. KHAN, Plaintiff-Appellant, v. AMERICAN AIRLINES *et al.*,
Defendants-Appellees.

First District (6th Division)   No. 1—93—0261

Opinion filed August 19, 1994.

Ivan M. Rittenberg, of Rittenberg & Buffen, of Chicago, for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Robert E. Haley and Adam J. Glazer, of counsel), for appellees.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Tariq Khan, appeals from an order dismissing his complaint pursuant to the motion of the defendants filed under section 2—615 of the Code of Civil Procedure. (Ill. Rev. Stat. 1991, ch. 110, par. 2—615.) The plaintiff's claims were against the defendant, American Airlines (American) and two American employees for false imprisonment, malicious prosecution and intentional infliction of emotional distress.

Because this case was decided on a motion to dismiss, our review should be restricted to the allegations of the complaint. But we have had some difficulty in determining precisely what was considered by the trial judge as assertions of fact, that is, whether she considered matters which the plaintiff now maintains she judicially noticed. We will proceed on the basis of the facts as they have been submitted to us in the parties' briefs.

Khan was on the premises of American, and the defendants Herb Briick and Bob Connors were employees of American, who were assigned security duties. American had in its possession an airline ticket believed to be stolen. American delivered the stolen ticket to Khan with the intent to entrap him and without facts to indicate that Khan knew the ticket was stolen when American, Briick and Connors delivered the ticket to him. After making the delivery, they

arrested Khan and had the Chicago police take him into custody and be confined in a police station and to be fingerprinted and photographed. The defendants had no factual basis or reason to believe Khan committed a crime; nonetheless, they had him charged with the crime of theft. Briick signed a misdemeanor complaint for theft against Khan. On April 4, 1990, a trial judge in criminal court entered an order of "stricken from docket with leave to reinstate. Defendant demands trial." As of June 14, 1991, the charge was not reinstated by the State.

In the second amended complaint, which is in issue here, count I charged American and Briick and Connors as servants of American with false imprisonment. Count II charged American and Briick and Connors as servants of American with malicious prosecution. Count III alleged that Briick acted alone or in concert with Connors or others and was guilty of false imprisonment of Khan. Count IV alleged that Briick was guilty of malicious prosecution. Count V and VI made the same allegations against Connors as it did against Briick in counts III and IV. Count VII alleged that American, Briick and Connors were guilty of intentional infliction of emotional distress because they arrested Khan knowing that he was en route to his father's funeral.

The judge dismissed the entire complaint. The record does not contain a report of proceedings for the hearing at which she entered her order. Consequently, we are unable to determine the basis upon which she based her ruling.

■ American maintains that the entire complaint was properly dismissed because the causes of action asserted by the plaintiff have been preempted by the Federal Aviation Act of 1958 (49 U.S.C. app. § 1301 *et seq.* (1988)). Section 1305 of the Act provides in part as follows:

> "(a) Preemption
> (1) *** [N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation." 49 U.S.C. app. § 1305(a)(1) (1988).

Section 1506 states that "[n]othing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to this chapter." (49 U.S.C. app. § 1506 (1988).) The issue before us is whether the claims made by the plaintiff relate "to rates, routes, or services of any air carrier." We judge that they do not.

Before 1992, several of the cases involving the scope of section 1305 could be divided into two categories: economic or regulatory issues and personal injury or damage issues (which included tort claims under State law). Several of the claims in the former category were held to be preempted by the language of section 1305. In the area of State deceptive advertising or antitrust laws, courts relied on the term "relating to *** rates" from section 1305 and reasoned that a State's attempt to regulate the dissemination of information for airline ticket prices or discounts related to or influenced "rates." (See *Trans World Airlines, Inc. v. Mattox* (5th Cir. 1990), 897 F.2d 773 (State deceptive advertising laws); *Illinois Corporate Travel, Inc. v. American Airlines, Inc.* (7th Cir. 1989), 889 F.2d 751 (State consumer fraud laws).) In the same category, courts have relied on the phrase "relating to *** services" for the preemption of claims involving handicapped seating, smoking and boisterous or uncooperative passengers. See, *e.g.*, *O'Carroll v. American Airlines, Inc.* (5th Cir. 1989), 863 F.2d 11 ("wrongful exclusion" of boisterous passengers); *Anderson v. USAir, Inc.* (D.C. Cir. 1987), 818 F.2d 49 (seating policies for handicapped persons); *Diefenthal v. Civil Aeronautics Board* (5th Cir. 1982), 681 F.2d 1039 (smoking regulations).

On the other hand, disputes involving traditional State law tort claims generally have not been preempted. The underlying rationale has been that the scope of the Act should not be so broad that it is used as a justification for the preemption of all conceivable State law claims having a remote connection to "rates, routes, or services." See, *e.g.*, *In re Air Crash Disaster at Stapleton International Airport* (D.C. Colo. 1988), 721 F. Supp. 1185 (no preemption of traditional tort remedies in crash); *Bieneman v. City of Chicago* (7th Cir. 1988), 864 F.2d 463 (condemnation based on airport noise).

The defendants rely principally on a case decided by the United States Supreme Court in 1992, *Morales v. Trans World Airlines, Inc.* (1992), 504 U.S. 374, 119 L. Ed. 2d 157, 112 S. Ct. 2031. In *Morales*, the Supreme Court held that State guidelines regarding airline fare advertising were expressly preempted by section 1305 of the Act. The issue was whether the National Association of Attorneys General's fare advertising guidelines (explaining how existing State consumer protection laws apply to advertising and frequent flyer programs) were preempted by the Act. The *Morales* Court, however, made it clear that certain State laws would not be preempted by the Act even under its broad reading of section 1305:

"[W]e do not *** set out on a road that leads to pre-emption of state laws against gambling and prostitution as applied to airlines. Nor need we address whether state regulation of the nonprice

aspects of fare advertising (for example, state laws preventing obscene depictions) would similarly 'relat[e] to' rates; the connection would obviously be far more tenuous. To adapt to this case our language in *Shaw*, '[s]ome state actions may affect [airline fares] in too tenuous, remote or peripheral a manner' to have pre-emptive effect. [Citation.] In this case, as in *Shaw*, '[t]he present litigation plainly does not present a borderline question, and we express no views about where it would be appropriate to draw the line.' " *Morales*, 504 U.S. at 390, 119 L. Ed. 2d at 171-72, 112 S. Ct. at 2040.

After oral argument, we granted the defendants leave to cite *Pearson v. Lake Forest Country Day School* (1994), 262 Ill. App. 3d 228, 633 N.E.2d 1315, in which the plaintiff filed a claim for intentional infliction of emotional distress because American Airlines refused to permit the minor plaintiff to board an airplane because of an alleged lack of available seats. The complaint alleged that seats were available. The plaintiff was a relative of an airline employee and was using a pass available to families of employees. The pass did not guaranty a seat on a flight. Rather, the pass passengers were required to put themselves on a standby list. The appellate court affirmed a dismissal of the complaint on the ground of Federal preemption holding that the plaintiff's claims "affect airline services directly, because they immediately arise from the denial, or the allegedly inadequate provision, of such services." (*Pearson*, 262 Ill. App. 3d at 235, 633 N.E. 2d at 1320.) We agree with the holding in *Pearson*, but it is not factually in point in this case. Parenthetically, we note that the holding is at odds with a case cited late by the plaintiff, *West v. Northwest Airlines* (9th Cir. 1993), 995 F.2d 148, in which the court of appeals held that the application of *Morales* did not compel preemption of a State claim of a passenger who was bumped from an overbooked airplane.

In *Miller v. Northwest Airlines* (1992), 253 N.J. Super. 618, 602 A.2d 785, the plaintiff brought claims for false arrest, and negligent and intentional infliction of emotional distress after he was detained by airport security and told that he was under arrest for having a cigarette lighter that resembled a small handgun. After the police arrived, he was permitted to board, and the police later mailed him the lighter. The trial judge granted the defendant's motion to dismiss. The New Jersey appellate court reversed and held that the plaintiff's claims were not preempted because the plaintiff's State tort claims merely had a tenuous effect on services.

In *Margolis v. United Airlines, Inc.* (E.D. Mich. 1993), 811 F. Supp. 318, decided after *Morales*, the court held that a plaintiff's

negligence claims for an injury sustained from luggage that fell from an overhead compartment were not preempted.

In *Doricent v. American Airlines, Inc.* (1993), ____ F. Supp. ____, the district court held that the plaintiff's claims for intentional infliction of emotional distress, assault and battery and violations of Massachusetts' civil rights laws were not preempted by the Act. The plaintiff alleged that, while boarding a flight from Haiti to New York, a flight attendant became angry with him and told him to "get out of the plane you black bastard"; the flight director told him he was "staying in Haiti"; the militia was summoned; he was pushed toward the militia guards; and, finally, the flight captain interceded and permitted him to stay on the flight. The court rejected the airline's claim that section 1305's language was broad enough to preempt the plaintiff's claims under the rubric of "services":

> "[T]he *Morales* decision does not compel a conclusion that the state claims of intentional torts made *** here 'relate to' services as the *Morales* court analyzed the term. Racial discrimination, the intentional infliction of emotional distress, and assault and battery have nothing whatsoever to do with any legitimate or quasi-legitimate industry-wide practice of affording airline service. Imposing liability for such conduct *** is not shown to in any way 'significantly impact' an airline's ability to administer services or set rates and routes. *** To argue that racial epithets, discriminatory ejection, and assault and battery should be considered a legitimate component of 'services' is ludicrous, at least in the absence of any showing of significant economic impact upon airline practices generally." *Doricent*, slip op. at 12.

■ Stated briefly, we agree with reasoning of *Miller, Margolis* and *Doricent*, and we do not agree with the defendants' claim that the holding of *Morales* is broad enough to preempt the plaintiff's State law claims because they arise from his possession of a stolen airline ticket. The fact that an airline ticket was involved here is peripheral and purely coincidental. In this regard, we respectfully disagree with the district court judge's decision in *Lawal v. British Airways, PLC* (S.D. Tex. 1992), 812 F. Supp. 713. We conclude, therefore, that the plaintiff's claims have not been preempted by the Aviation Act.

■ We turn now to the argument of American that the complaint did not state causes of action. We will first consider the claim of malicious prosecution. In order to state a cause of action for malicious prosecution, a plaintiff must allege facts showing: (1) the commencement or continuance of an original or criminal judicial proceeding by the defendant; (2) termination of the prosecution in favor of the plaintiff in a manner indicative of the innocence of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of

malice; and (5) damages resulting to the plaintiff. (*Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 411 N.E.2d 229.) The sole issue is whether the criminal court proceedings were terminated in a manner indicative of the innocence of the plaintiff. We conclude that the proceedings were not so terminated. Indeed, they were not legally terminated at all.

■ Beginning in 1862, a long line of cases has held that the striking of a case from a criminal docket on motion of the State with leave to reinstate is not a legal termination in favor of the defendant. In *Tibbs v. Allen* (1862), 29 Ill. 535, the supreme court said that the practice in criminal cases of removing a case from the court's docket on motion of the State's Attorney had "long obtained in this State, now near half a century." (*Tibbs*, 29 Ill. at 547.) The effect of the motion was described:

> "It is all one motion; to remove, subject to be reinstated, thereby excluding the conclusion that the case *is at an end*, but implying that it is still subject to the action of the court." (Emphasis added.) (*Tibbs*, 29 Ill. at 547.)

The supreme court, relying on *Tibbs*, again held that striking a cause from the docket was not a legal termination for the purposes of establishing a ground for malicious prosecution. *Blalock v. Randall* (1875), 76 Ill. 224.

In *King v. Avila* (N.D. Ill. 1989), 760 F. Supp. 681, the district court, relying on *Blalock*, again held that a dismissal with leave to reinstate was not a termination in favor of the accused. In *People ex rel. De Vos v. Laurin* (1979), 73 Ill. App. 3d 219, 391 N.E.2d 164, the appellate court held that an order striking a case with leave to reinstate "excludes the conclusion that the case is at an end but implies that it is still subject to the action of the court," citing *Tibbs v. Allen*. *DeVos*, 73 Ill. App. 3d 219.

In the face of an array of precedent, we must also hold that the plaintiff has failed to allege a termination of the criminal proceedings in a manner indicative of his innocence. We are not persuaded to hold otherwise because the plaintiff would have had a final determination in his favor if he had moved for and had been granted a discharge for failure to try him within the appropriate statutory period following his demand for trial. See *Rich v. Baldwin* (1985), 133 Ill. App. 3d 712, 479 N.E.2d 361.

■ We also agree with the defendants that the plaintiff has failed to plead facts to support a claim of intentional infliction of emotional distress. The requirements for this tort were set out in *McGrath v. Fahey* (1988), 126 Ill. 2d 78, 86, 533 N.E.2d 806: The conduct must be truly extreme and outrageous; the actor must either intend that his conduct inflict severe emotional distress or know that there is at

least a high probability that his conduct will cause severe emotional distress; and the conduct must in fact cause severe emotional distress. Mere insults, indignities, threats, annoyances, petty oppressions or other trivialities do not qualify as outrageous conduct. (*McGrath*, 126 Ill. 2d at 86.) Rather, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and, to be regarded as intolerable in a civilized community. As the *McGrath* court stated, "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." *McGrath*, 126 Ill. 2d at 86.

■ The plaintiff alleged that the conduct of American through its agents was extreme "because immediately after taking the plaintiff into custody, the defendants had knowledge of the plaintiff's added sensitivity due to the fact that the plaintiff informed them that he was en route to his father's funeral." The plaintiff further alleged that as a result, he "has problems sleeping, refrains from discussing the incident with this [*sic*] spouse, fears that he again will be arrested, has reoccurring nightmares of being arrested and not attending his father's funeral." We do not believe that the alleged acts of the defendant could be considered conduct that goes beyond all possible bounds of decency, that the distress the plaintiff suffered as a result of the conduct was such that no reasonable person could be expected to endure it or that there was a high degree of probability that severe emotional distress would follow the conduct of the defendants and that the defendant went ahead in conscious disregard of that probability. See *Hearon v. City of Chicago* (1987), 157 Ill. App. 3d 633, 510 N.E.2d 1192.

■ The defendants have not argued in their briefs that the plaintiff did not allege a cause of action for false imprisonment. Consequently, that claim is waived. Moreover, we have examined the allegations of the complaint and conclude that the plaintiff has alleged facts that would support a finding of false imprisonment. (See *Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 564 N.E.2d 1222.) We reject out of hand the defendants' argument that we do not have jurisdiction over the plaintiff's claim that he sufficiently pleaded an action for false imprisonment. The argument does not require any discussion.

For these reasons, the order dismissing counts II, IV, VI and VII is affirmed; the order dismissing counts I, III and V is reversed.

Judgment affirmed in part; reversed in part and remanded.

McNAMARA and RAKOWSKI, JJ., concur.