**Catherine CHRISSAFIS, Plaintiff,**

**v.**

**CONTINENTAL AIRLINES, INC., and Joyce Burgess, Defendants.**

**No. 95 C 5080.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 30, 1996.

Damon E. Dunn, Jonathan Vegosen, Daniel Thomas Graham, Levin & Funkhouser, Ltd., Chicago, IL, for Catherine Chrissafis.

Alan J. Brinkmeier, Michael John Gilmartin, Merlo, Kanofsky & Brinkmeier, Ltd., Chicago, IL, for Continental Airlines, Inc., a Delaware Corporation.

Alan J. Brinkmeier, Suzanne Jane Massel, Michael John Gilmartin, Merlo, Kanofsky & Brinkmeier, Ltd., Chicago, IL, for Joyce Burgess.

### MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Catherine Chrissafis filed this suit against Continental Airlines, Inc. ("Continental") and Continental employee Joyce Burgess. Chrissafis's complaint alleges false arrest, false imprisonment, intentional infliction of emotional distress, and breach of contract. The court is vested with jurisdiction over this case based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a). Defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motions are denied.

### Background

The following facts are taken from the complaint. Chrissafis, a New Jersey resident, purchased a round-trip airline ticket from Continental to transport her from Newark, New Jersey to Chicago, Illinois and then back to Newark. On July 4, 1994, after spending time in Chicago, Chrissafis's friend drove her to O'Hare International Airport where she boarded Continental flight number 1275 for her return trip. Upon taking her seat, Chrissafis realized that she mistakenly had brought her friend's car keys aboard the aircraft with her.

Chrissafis could see through the airplane window that her friend was still in the boarding area in the terminal. In an attempt to return the keys, Chrissafis left her seat and went to the front of the plane where she asked a flight attendant for permission to deplane. The flight attendant told Chrissafis that she could return the keys if she did so quickly because the flight was about to depart. As Chrissafis proceeded up the ramp to the terminal, another Continental employee stopped her and asked where she was going. After Chrissafis explained the situation, the employee agreed with the flight attendant's instruction and told Chrissafis that she could return the keys and reboard the aircraft. Chrissafis, therefore, continued up the ramp back to the boarding area where her friend was waiting.

At the end of the ramp, the door to the waiting area was open. As Chrissafis stepped through the door, she waved to her friend and told him to come pick up his keys. As her friend approached, Continental employee Burgess approached Chrissafis and

demanded to know what she was doing. Chrissafis explained that two Continental employees had given her permission to return the keys to her friend and reboard the aircraft. Nevertheless, Burgess closed the door to the plane, leaving Chrissafis in the waiting area. Despite Chrissafis's protestations, Burgess refused to allow Chrissafis to reboard the flight.

As Burgess leaned to lock the door to the aircraft, her forearm collided with Chrissafis's forearm. At that point, Burgess declared that she was going to call the police and have Chrissafis arrested. As Burgess called the police, one of the Continental employees who had allowed Chrissafis to exit the aircraft opened the gateway door from the other side. That employee instructed Chrissafis to follow her back on to the aircraft, which Chrissafis did.

Burgess objected and followed Chrissafis and the Continental employee down the ramp to the airplane. Once aboard the airplane, both Chrissafis and Burgess told their stories to the pilot. The pilot instructed Chrissafis to retrieve her carry-on belongings and exit the plane. Chrissafis complied with the pilot's instructions.

By the time Chrissafis returned to the boarding area, four Chicago police officers had arrived. Burgess told the police officers her version of what happened and Chrissafis was arrested for battery. Chrissafis was placed in a holding cell at O'Hare and then transported to a Chicago police precinct where officers photographed and fingerprinted her. Chrissafis was then strip-searched and incarcerated in a cell at the police station. Chrissafis remained incarcerated for several hours until bail could be posted.

On August 15, 1994, a hearing was held on the criminal complaint filed by Burgess. Chrissafis retained counsel, returned to Chicago, and appeared at the hearing. Burgess did not appear at the hearing and the court dismissed the battery charge.

1. In 1994, Congress passed legislation renumbering the ADA preemption clause from 49 U.S.C. § 1305(a) to 49 U.S.C. § 41713(b). *See* Revision of Title 49, Pub.L. No. 103–272, 108 Stat. 745, 1143 (1994). The wording of the preemption clause was also altered, but the substantive

### Motion to Dismiss

A court may dismiss a complaint pursuant to Rule 12(b)(6) only if it is clear that no relief is possible under any set of facts that could be established consistent with the allegations. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992). All well-pleaded facts in the complaint are taken as true and all inferences are drawn in the light most favorable to the plaintiff. *Dawson v. General Motors*, 977 F.2d 369, 372 (7th Cir. 1992).

### Analysis

Defendants Continental and Burgess move to dismiss the complaint on the grounds that state tort and contract claims are preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b).[1] In order to decide the issue, an understanding of the policies underlying the ADA is necessary. Therefore, the court begins its analysis by recounting the history of the act.

### I. HISTORY OF PREEMPTION PROVISION

In 1958, Congress passed the Federal Aviation Act ("FAA") which created the Civil Aeronautics Board ("CAB"). *American Airlines, Inc. v. Wolens*, —— U.S. ——, ——, 115 S.Ct. 817, 821, 130 L.Ed.2d 715 (1995). The FAA authorized the CAB to regulate entry into the interstate airline industry, the routes airlines could fly, and the fares they could charge consumers. *Id.* The statute contained a savings clause that preserved state common law claims. *Id.* Although the 1938 Act was replaced by a similar regulatory scheme in 1958, the principal provisions of the 1938 statute remained in effect until 1978. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 422, 112 S.Ct. 2031, 2056, 119 L.Ed.2d 157 (1992) (Stevens, J. dissenting). In 1978, Congress amended the FAA by enacting the ADA "to encourage, develop and attain an air transportation system

meaning remained the same. *American Airlines, Inc. v. Wolens*, —— U.S. ——, —— n. 1, 115 S.Ct. 817, 821 n. 1, 130 L.Ed.2d 715 (1995). Although the briefs cite the previous statute, the court will refer to the preemption clause as Section 41713(b).

which relies on competitive market forces to determine the quality, variety and price of air services." *Id.* (citing H.R.Conf.Rep. No. 1779, 95th Cong., 2d Sess. 53 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3737, 3773).

▇ When it created the ADA, Congress intended to "ensure that the States would not undo federal deregulation with regulation of their own." *Id.* at 378, 112 S.Ct. at 2034. Accordingly, Congress enacted a preemption clause to prevent state regulation of the airline industry. The ADA's preemption clause provides that a state:

> may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier.

49 U.S.C. § 41713(b). By including this preemption clause, Congress sought "to prevent state economic regulation from frustrating the benefits of federal deregulation, and to clarify the confusion under the prior law which permitted some dual state and federal regulation of the rates and routes of the same carrier." *Morales,* 504 U.S. at 424, 112 S.Ct. at 2057 (Stevens, J., dissenting) (citing 44 Fed.Reg. 9948, 9949 (1979)).

▇ While Congress sought to preempt state economic regulation over the airline industry, it retained the savings clause from the 1958 Act. *See* 49 U.S.C.App. § 1506. The savings clause reads:

> Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

*Id.* Congress preserved this savings clause to protect the states' ability to control non-economic matters concerning airlines within their respective borders. *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 337 (5th Cir. 1995); *see also Morales,* 504 U.S. at 425, 112 S.Ct. at 2058 (Stevens, J., dissenting) (explaining that preemption clause "represents simply a codification of existing law and leaves unimpaired the states' authority over intrastate matters") (quoting Hearings on H.R. 8813 before the Subcommittee on Aviation of the House Committee on Public

Works and Transportation, 95th Cong., 1st Sess. 200 (1977)).

The scope of the ADA's preemption clause and savings clause has been the subject of much debate in the courts. In *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Supreme Court considered whether Section 41713(b) preempts state attorneys general from enforcing state consumer protection statutes in regards to the advertising of airline fares. *Id.* at 378, 112 S.Ct. at 2034. The Supreme Court held that the plain meaning of the term "relating to" in the preemption provision indicated a congressional intent to broaden the scope of preemption. *Id.* at 384, 112 S.Ct. at 2037. In other words, state statutes or actions having some "connection with or reference to" airline rates, routes, or services are preempted under the ADA. *Id.* However, the Court cautioned against preempting claims where the state law's impact on a carrier's rates, routes, or services is "tenuous, remote, or peripheral." *Id.* at 390, 112 S.Ct. at 2040 (quoting *Shaw v. Delta Air Lines,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)).

The Supreme Court revisited the reach of the ADA's preemption clause in *American Airlines, Inc. v. Wolens,* —— U.S. ——, ——, 115 S.Ct. 817, 821, 130 L.Ed.2d 715 (1995). In that case, members of the American Airlines frequent flier program challenged certain program modifications that devalued credits the members had already earned. *Id.* at ——, 115 S.Ct. at 822. The plaintiffs in that case argued that the modifications violated the Illinois Consumer Fraud Act and constituted a breach of contract. *Id.* Interpreting the *Morales* decision, the Court concluded that the American Airlines frequent flier program related to "rates, routes, or services." *Id.* at ——, 115 S.Ct. at 823. However, the Court went on to emphasize that a state must also "enact or enforce" a law affecting rates, routes, or services before such a law is preempted by the ADA. *Id.* Following this logic, the Court distinguished the Illinois Consumer Fraud Act claim from their breach of contract claim. The Court held that the ADA preempted the Illinois Consumer Fraud Act claim because that claim constituted the enactment or enforce-

ment of state law. *Id.* In contrast, the Court found that the ADA did not preempt the contract claim because a state does not "enact or enforce a law" simply by enforcing private contractual agreements. *Id.* at ——, 115 S.Ct. at 824.

The Seventh Circuit Court of Appeals recently interpreted *Morales* and *Wolens* in *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir.1996). The plaintiff in *Travel All* was a travel agency which had arranged flights for 180 clients on Saudi Arabian Airlines. *Travel All*, 73 F.3d at 1428. The airline cancelled all 180 tickets and required the passengers to repurchase tickets directly from the airline. *Id.* In addition, the airline made disparaging remarks to passengers about the travel agency. *Id.* As a result of the cancellations, the travel agency lost its commissions for all 180 clients. *Id.* The travel agency sued the airline for breach of contract, slander and defamation, tortious interference with business relationship, fraud, and intentional infliction of emotional distress. *Id.*

The Seventh Circuit held that the ADA did not preempt the travel agency's breach of contract claim. *Id.* at 1432. Following *Wolens*, the court reasoned that the terms and conditions of the contract were self-imposed obligations and did not " 'amount to a State's enactment or enforcement of any law.' " *Id.* (quoting *Wolens*, —— U.S. at ——, 115 S.Ct. at 824). The court concluded, however, that the ADA did not preempt the slander and defamation claims because those statements were not "services" within the meaning of the ADA. *Id.* at 1433. Finally, *Travel All* held that the agency's claims for tortious

interference, intentional infliction of emotional distress, and fraud "could withstand scrutiny if they were based on the slanderous and defamatory comments alone." *Id.* at 1434. However, the court noted that the travel agency's intentional tort claims "relate to" airline services because they are based on the airline's "refusal to transport passengers who had booked their flights through [the travel agent]." *Id.* at 1435. With these decisions in mind, the court turns to the question presented by this case—whether Chrissafis's state law contract and tort claims are preempted by the ADA.

## II. PLAINTIFF'S CLAIMS

■ The cases cited above make clear that, for a claim to be preempted by the ADA, two things must be true: (1) the claim must derive from the enactment or enforcement of state law, and (2) the claim must relate to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them. *Id.* at 1432.

### A. Enactment or Enforcement of State Law

■ The first prong of the test is fairly straightforward. To decide whether plaintiff's contract claim evolves from the enactment of state law, the court need look no further than *Wolens*. In that case, the Supreme Court explained that court enforcement of a private contract does not constitute "a State's enactment or enforcement of any law." *Wolens*, —— U.S. at ——, 115 S.Ct. at 824. Like the plaintiffs in *Wolens*,[2] Chrissafis does not allege "a violation of state-im-

---

**2.** Defendants insists that the holding of *Wolens* does not apply to the contract between Chrissafis and Continental. They argue that the ADA preempts Chrissafis's breach of contract claim because her claim involves a contract between an airline and an individual rather than between an airline and its passengers nationwide. (Mem. at 13–14.) Defendants support this argument by citing the following language from footnote 8 of the *Wolens* decision:

> The United States notes that '[s]ome state-law principles of contract law might well be preempted to the extent they seek to effectuate the State's public policies, rather than the intent of the parties.' Brief for United States as Amicus Curiae 28. Because contract law is

not at its core 'diverse, nonuniform, and confusing,' (citation omitted), we see no large risk of nonuniform adjudication inherent in '[s]tate-court enforcement' of the terms of a uniform agreement prepared by an airline and entered into with its passengers nationwide.

*Wolens*, —— U.S. at —— n. 8, 115 S.Ct. at 826 n. 8 (citing Brief for United States as Amicus Curiae 27). In the court's view, footnote 8 does not limit the *Wolens* holding to contracts between an airline and a nationwide group of passengers. Rather, the footnote is merely a reminder that some contract actions may be preempted if they attempt to effectuate state policies rather than the parties' intent. *See Travel All*, 73 F.3d at 1432.

posed obligations, but rather … that the airline breached a self-imposed undertaking." *Travel All,* 73 F.3d at 1432. Because plaintiff's breach of contract claim does not evolve from state law, that claim is not preempted by the ADA.

■ Plaintiff's claims for false arrest, false imprisonment, and intentional infliction of emotional distress stand on different footing. Unlike contractual duties which are self-imposed, the standards for these claims are defined by state law. *Id.* at 1435. Therefore, the court concludes that these remaining claims all derive from the "enactment or enforcement" of state law.

### B. *Relate to Services*

■ Having determined that the false arrest, false imprisonment, and intentional infliction of emotional distress claims survive the first prong of the test, the court must decide whether these claims "relate to airline services." *See id.* at 1432. The Seventh Circuit has defined an airline "service" as:

> a bargained-for or anticipated provision of labor from one party to another.... Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself.

*Travel All,* 73 F.3d at 1433 (citing *Hodges,* 44 F.3d at 336). In deciding whether a particular cause of action relates to rates, routes or services, the court must examine the claim in the context of the facts. *Id.*

#### 1. False Arrest and False Imprisonment [3]

Several courts have addressed the issue of whether the ADA preempts false arrest and false imprisonment claims, reaching divergent conclusions. *Compare Williams v. Express Airlines I, Inc.,* 825 F.Supp. 831 (W.D.Tenn.1993) (ADA preempts false arrest and false imprisonment claims); *Lawal v. British Airways, PLC,* 812 F.Supp. 713 (S.D.Tex.1992) (same) *with Diaz Aguasviva v. Iberia Lineas Aereas de Espana,* 902 F.Supp. 314 (D. Puerto Rico 1995) (ADA

does not preempt false arrest and false imprisonment claims); *Sedigh v. Delta Airlines, Inc.,* 850 F.Supp. 197 (E.D.N.Y.1994) (same); *Curley v. American Airlines, Inc.,* 846 F.Supp. 280 (S.D.N.Y.1994) (same); *Bayne v. Adventure Tours USA, Inc.,* 841 F.Supp. 206 (N.D.Tex.1994) (same); *Khan v. American Airlines, Inc.,* 266 Ill.App.3d 726, 203 Ill.Dec. 171, 639 N.E.2d 210 (1994) (same). Although these cases reach contrary conclusions, they can be reconciled because they address different sets of facts.

Those cases concluding that the ADA preempts false arrest and false imprisonment claims involve incidents in which the airline refused or failed to provide a service to a passenger. *See Williams,* 825 F.Supp. at 832–33; *Lawal,* 812 F.Supp. at 715. In *Williams,* for example, a passenger confined to a wheelchair brought a false imprisonment claim after he was denied admittance to a flight then strapped to an immobile chair in the airline waiting area. *Williams,* 825 F.Supp. at 832. The court held that, because the plaintiff's objective was to fly on the defendant's airplane, the claim related to services and was preempted. *Id.* at 833. Similarly, in *Lawal,* the plaintiff was detained by airline personnel and forced to purchase a new ticket (the airline believed the passenger was traveling with a stolen ticket). *Lawal,* 812 F.Supp. at 715. The court held that the plaintiff's false arrest and false imprisonment claims were preempted because they "clearly relate to airline services." *Id.* at 720. In these cases, where the crux of the claim was the airline's refusal to transport the passenger, the courts concluded that the claims related to the provision of services and were therefore preempted by the ADA. *See Travel All,* 73 F.3d at 1434.

■ In contrast, where the gist of the false arrest and false imprisonment claim is that the airline caused the passenger to be arrested by authorities without a proper factual basis, courts have held that the claims are not related to services and, therefore, are not preempted. For example, in *Diaz Aguasviva,* 902 F.Supp. at 316, the court

---

**3.** Count I of Chrissafis' complaint alleges both of these torts in the same count. Since both torts arise out of the same facts, the court will address them together.

permitted a passenger to pursue a claim that airline personnel falsely identified the passenger as an illegal alien, causing police and customs agents to arrest and detain her. Likewise, in *Curley,* 846 F.Supp. at 281–82, the court allowed a claim that the flight crew had falsely arrested the passenger for smoking marijuana, causing him to be strip-searched, threatened, and detained for several hours. In a similar vein, in *Bayne,* 841 F.Supp. at 207, the court refused to preempt a passenger's claim that an airline pilot made misrepresentations to police, causing plaintiff to be taken into custody, detained, and subjected to a luggage search. *See also Khan,* 203 Ill.Dec. at 172, 639 N.E.2d at 211 (airline had plaintiff falsely arrested for theft, causing him to be incarcerated in police station). These courts concluded that an airline's false arrest and imprisonment of a passenger does not constitute a "service" within the preemptive scope of the ADA. *See Curley,* 846 F.Supp. at 284; *Bayne,* 841 F.Supp. at 209. As one court explained, "tortious conduct of an airline is not a regular or typical 'service' provided by the airline industry." *Diaz Aguasviva,* 902 F.Supp. at 319. Rather, arrests and imprisonments based on false factual assertions "come squarely within the exception noted in *Morales,* namely conduct which affects airline services in 'too tenuous, remote, or peripheral a manner to have any preemptive effect.'" *Curley,* 846 F.Supp. at 284 (quoting *Morales,* 504 U.S. at 390, 112 S.Ct. at 2040).

■ Chrissafis's allegations are very similar to the facts in this second line of cases. Chrissafis alleges that defendants' statements to the Chicago Police were false and caused her to be arrested and imprisoned "without ... grounds to believe that Chrissafis had committed a criminal offense." (Compl. ¶ 24.) Chrissafis's false arrest and imprisonment claims do not focus on Continental's refusal or failure to provide a service. Instead, Chrissafis centers her false arrest and false imprisonment claims around Burgess's allegedly bogus statements to law enforcement officials. These actions simply do not relate to services.

■ "Certain actions taken by airline personnel (*e.g.,* a flight attendant assaulting a passenger) are undoubtedly not 'services,' but only because, objectively speaking, they are not part of any contractual arrangement with the airline." *Travel All,* 73 F.3d at 1434; *see also Rombom v. United Air Lines, Inc.,* 867 F.Supp. 214, 222 (S.D.N.Y.1994) (preemption is appropriate only if tortious act reasonably furthered the provision of an airline service). Like assaulting a passenger, furnishing false information to police and thereby causing a false arrest and incarceration are not part of a contractual arrangement between an airline and its passenger. *Travel All,* 73 F.3d at 1433–34. Nor does causing a false arrest and false imprisonment reasonably further the provision of an airline service. *Rombom,* 867 F.Supp. at 222–23. Because these actions exceed the scope of the agreement between an airline and passenger, they do not constitute services within the meaning of the ADA. *Travel All,* 73 F.3d at 1434. Simply put, "[a]n airline responsible for the false arrest, false imprisonment, or the defamed reputation of a passenger is not providing an airline 'service.'" *Diaz Aguasviva,* 902 F.Supp. at 319. Since the allegedly false accusations made to the Chicago Police were not "services" within the meaning of the ADA, Burgess's false arrest and false imprisonment claims are not preempted. *See Sedigh,* 850 F.Supp. at 200–01; *Curley,* 846 F.Supp. at 284.

■ The court notes that this holding is consistent with the ADA's purpose of preempting state economic regulation of the airline industry. *See Morales,* 504 U.S. at 424, 112 S.Ct. at 2057 (Stevens, J., dissenting) (citing 44 Fed.Reg. 9948, 9949 (1979)); *Pittman v. Grayson,* 869 F.Supp. 1065, 1072 (S.D.N.Y.1994). The ADA is intended to preempt economic regulation of airlines by states and is not a safe harbor for airlines from civil tort claims. *Pittman,* 869 F.Supp. at 1072; *see also Sedigh,* 850 F.Supp. at 200. Allowing Chrissafis's tort claim to proceed will not significantly impact Continental's rates, routes, or services. *See Travel All,* 73 F.3d at 1433. Any economic effect this suit may have on Continental is "too tenuous, remote, or peripheral" to justify preemption. *See id.* Additionally, this holding accords with Congress' decision to retain the savings

clause to protect the states' ability to control non-economic matters concerning airlines within their state. *Hodges,* 44 F.3d at 337. Therefore, the court holds that the ADA does not preempt Chrissafis's false arrest and false imprisonment claims.

### 2. Intentional Infliction of Emotional Distress

The complaint does not make clear whether Chrissafis's emotional distress was the result of the airline's refusal to board her or the consequence of her arrest and imprisonment. For the reasons explained above, Chrissafis's claim would be preempted were it based only on the allegation that Continental forced her to exit the aircraft and refused to transport her to Newark. *See Travel All,* 73 F.3d at 1434. Nevertheless, Chrissafis may proceed with her emotional distress claim to the extent that it is based on the allegation that defendants provided false information leading to her arrest and imprisonment. Accordingly, defendants' motions to dismiss plaintiff's emotional distress claim are denied.

### Conclusion

For the foregoing reasons, the Motions to Dismiss of defendants Burgess and Continental are denied. Parties are instructed to discuss settlement before the next court date.